210 So.2d 645 (1968)
C.R. CRAIG
v.
COLUMBUS COMPRESS & WAREHOUSE COMPANY et al.
No. 44910.
Supreme Court of Mississippi.
May 20, 1968.
*646 Burgin, Gholson & Hicks, Columbus, for appellant.
Odom, Odom & Pittman, Greenwood, Robin Weaver, Columbus, Bell & McBee, Greenwood, for appellee.
RODGERS, Justice.
This is a suit brought by the holder of warehouse receipts against the warehouses for the market value of 93 bales of cotton, 46 of which were stored with the Columbus Compress & Warehouse Company, a Mississippi corporation, and 47 of which were stored with the Union Compress & Warehouse Company, Greenwood, Mississippi, a Delaware corporation. The case was tried in the Chancery Court of Lowndes County, Mississippi, resulting in a decree in favor of the complainant for one bale of cotton. The complainant has appealed from this decree of the chancery court.
The facts as found by the Chancery Court of Lowndes County are not challenged on this appeal. That court found that C.E. Holmes, a cotton merchant of Greenwood, transferred 150 cotton warehouse receipts to R.H. Allen & Company of Memphis, Tennessee. Some of these receipts were issued by appellee Columbus Compress & Warehouse Company of Columbus, Mississippi, and the others were issued by appellee Union Compress & Warehouse Company in Greenwood, Mississippi. On July 3, 1962 C.R. Craig, the complainant below and appellant here, purchased from R.H. Allen & Company the 150 warehouse receipts. This purchase was the result of telephone calls received by Craig from C.E. Holmes, who arranged the purchase of the 150 bales of cotton evidenced by the warehouse receipts and told Craig that it would be a good buy.
Apparently Craig and Holmes entered into an agreement whereby Holmes would act as agent for Craig in the resale of the cotton, since on October 12, 1962 Craig transferred 19 bales of the cotton to Holmes. Subsequent transfers brought the total number of bales, each evidenced by one warehouse receipt, transferred by Holmes to Craig to 57, leaving 93 receipts in the possession of Craig. Thereafter Craig was advised to check with the appellees who had issued the warehouse receipts to determine the status of the receipts which he held. He requested appellee Union Compress & Warehouse Company for a resampling of the cotton remaining *647 unsold, and also made a similar request of the Columbus Compress & Warehouse Company.
Upon making these requests, the complainant was advised by both appellees that duplicate receipts had been issued for the cotton, the original receipts of which Craig still held. Of the 93 which Craig still held, 46 were issued by Columbus Compress & Warehouse Company and 47 were issued by Union Compress & Warehouse Company in Greenwood.
The proof further shows that, except for one bale, all of the cotton represented by the warehouse receipts issued by Columbus Compress & Warehouse Company were sold to T.R. Gregory of Greenwood, Mississippi, as shown by Invoice No. 3522-80 dated December 9th, 1959 covering 55 bales of cotton, making a total of 169 bales sold to T.R. Gregory. Among these 169 bales were the 45 bales in question, all of the cotton in the Columbus Compress & Warehouse Company except the cotton represented by cotton warehouse receipt No. 57289, which bale of cotton weighed 352 pounds.
Mr. Gregory testified that he subsequently sold this cotton in the early part of 1960, and upon preparing the papers for shipment of the cotton discovered that certain of the cotton warehouse receipts were missing and thereupon executed a bond to the Columbus Compress & Warehouse Company in the amount of $24,000, as shown by Exhibit No. 13; the bond was dated February 18th, 1960. Upon receipt of this bond and upon checking with the Department of Agriculture, the president of Columbus Compress & Warehouse Company testified that the cotton was shipped to a point in Georgia. Mr. Gregory testified that he had not delivered the warehouse receipts to Mr. C.E. Holmes, that he had not authorized the delivery of warehouse receipts to Mr. C.E. Holmes, and that he had not authorized any person to execute a transfer or a negotiation of the cotton warehouse receipts that he was unable to locate. He testified that it was his habit to deposit the cotton warehouse receipts in the Bank of Greenwood at the close of each business day, and then on the following morning he would pick up his bag of receipts and take them to his office. In the course of buying and selling cotton, Mr. Gregory would change the receipts in the bag to cover any overdrafts and loans that he might have with the bank and would pledge the receipts that were in the bag each evening when the bag was delivered to the bank.
Mr. Buford of Buford Cotton Company testified that he purchased the cotton covered by the 47 cotton warehouse receipts issued by Union Compress & Warehouse Company, and that he likewise did business with the Bank of Greenwood, depositing cotton warehouse receipts each evening in the Bank of Greenwood and taking the receipts out the following morning for use in his business during the day. He likewise testified that he had not authorized the delivery of any of these receipts to C.E. Holmes, that he had not authorized any person to negotiate or transfer any of the 47 cotton warehouse receipts in question.
As for the bale of cotton represented by warehouse receipt No. 57289 issued by Columbus Compress & Warehouse Company, it was shown that a duplicate receipt had been issued to Sanders Cotton Company of Greenwood, Mississippi and that this receipt was subsequently sold to Anderson-Clayton Cotton Company. There was no testimony in the record and nothing in the pleadings to indicate whether or not this bale of cotton had been shipped from the warehouse or whether or not that bale of cotton was located in the warehouse at the time of the trial. It was the opinion of the trial court that the complainant, since there was no explanation of negotiation or transfer of the receipt covering this bale of cotton, was entitled to recover this particular bale of cotton upon surrender of warehouse receipt No. 57289.
*648 It was the opinion of the trial court that the other 92 receipts were not transferred or negotiated to T.R. Gregory or Buford Cotton Company in the ordinary course of business, and that they had not authorized the transfer or negotiation of these receipts to C.E. Holmes or to any other person except the transfer that they authorized when the cotton was sold. Upon these findings of fact, the Chancery Court of Lowndes County rendered a decree in favor of the complainant for one bale of cotton.
The appellant complains on appeal that the court erred in applying Mississippi law to both the negotiation of cotton warehouse receipts from C.E. Holmes to R.H. Allen & Company in Memphis, Tennessee, and the negotiation of cotton warehouse receipts from R.H. Allen Company to C.R. Craig in New Albany, Mississippi, and that the failure of the court to permit the appellant to recover for the value of the cotton represented by the warehouse receipts is a reversible error.
In the case of St. Paul Fire & Marine Insurance Company v. Leflore Bank & Trust Company, 254 Miss. 598, 609-610, 181 So.2d 913, 918 (1966), involving some of the parties in the case now before the Court, we said that:
"The question of title of the appellee to the receipts and the cotton represented by the same is controlled by the Uniform Warehouse Receipts Act of Mississippi, appearing as Mississippi Code Annotated sections 5012 through 5070 (1956). The Act as originally promulgated and as adopted and still in force in Mississippi does not permit a receipt to be negotiated by anyone except the owner, or a person to whom the owner has entrusted possession of the receipt. It provides that the negotiation of the receipt is not impaired by the fact that the owner of the receipt was induced by fraud, mistake, or duress to entrust the possession of the receipt to another or that its negotiation by the person to whom it was entrusted by the owner was a breach of duty on the part of such person. The Act does not, however, permit a trespasser, a finder or thief to pass any title to the receipt. To the contrary, it provides that the person to whom a negotiable receipt is negotiated acquires thereby only `such title to the goods as the depositor or person to whose order the goods were to be delivered by the terms of the receipt had or had ability to convey to a purchaser in good faith for value * * *.' (Miss. Code Ann. § 5052 (1956)."
We learn from the teaching in St. Paul Fire & Marine Insurance Company v. Leflore Bank & Trust Company, supra, that at that time Mississippi had not adopted the title embodiment amendment to the Uniform Warehouse Receipt Act; and it is admitted by all parties to the present action that Mississippi did not then permit title to fungible goods to pass by stolen warehouse receipts under sections 5051 through 5056, Mississippi Code 1942 Annotated (1956). Of course, since that time these Code sections have been repealed and supplanted by Mississippi Laws 1966, chapter 316, section 7-502 (Mississippi Uniform Commercial Code section 41A:7-502), effective March 31, 1968. However, we are not dealing with the new law; we are dealing with the law as it was on the date of the transfer of the receipts from R.H. Allen & Company of Memphis, Tennessee to C.R. Craig, the appellant, namely, July 3, 1962.
At that time the Tennessee law, sections 47-946, 47-953, 47-1232 and 47-1238 of Tennessee Code Annotated (1956) (now repealed by the adoption of the Uniform Commercial Code in that state), was to the effect that warehouse receipts were negotiable, and carried the title to the fungible goods, and the title to the goods is not impaired by the fact that the receipts were obtained by fraud or theft.
Which law is applicable to the facts here involved? Is the law of Tennessee applicable since the receipts were actually *649 in Tennessee, or is the law of Mississippi to be applied, since the goods were located in the warehouses in Mississippi?
We are of the opinion that the law of Mississippi is applicable under the facts in this case for two reasons. First: The general law throughout the country favors the application of the law where the property is located. It is pointed out by the textwriter in 93 C.J.S. Warehousemen and Safe Depositaries § 25a (1956) that:
"The laws of the state in which the goods are stored and in which the receipt is issued are to be applied in determining the validity and effect of the transfer of a warehouse receipt, the liability of the warehouseman to the transferee, the passage of title to the transferee as against the domestic creditors of the transferor, and whether the transferee is a bona fide holder."
This rule is also found in 11 Am.Jur., Conflict of Laws § 98 (1937), which is as follows:
"The validity and the effect of a transfer of a warehouse receipt are generally governed by the law of the state where the property is stored and the receipt is issued. A state which has goods within its jurisdiction and power, although a sale, mortgage, or pledge of such goods has been made elsewhere, has the power to require such goods to be dealt with in the same way as would be necessary in a domestic transaction, in order to pass a title which the state where the goods are located will recognize as against domestic creditors of the vendor or pledgeor. Moreover, the inference is that the parties in dealing with warehouse receipts contracted with a veiw to the laws of the state where the property is stored, where there is nothing in the relationship of the parties to show a contrary intent. * * *"
Second: In recent years there is a trend in some state and federal courts to adopt the "center of gravity doctrine." This doctrine is a rule whereby the court trying the action applies the law of the place which has the most significant relationship to the event and parties, or which, because of the relationship or contact with the event and parties, has the greatest concern with the specific issues with respect to the liabilities and rights of the parties to the litigation. 15A C.J.S. Conflict of Laws § 8(2) (1967).
In the instant case, all of the interested parties are within the borders of Mississippi. The warehouse receipts are Mississippi contracts. The theft of these receipts occurred within this state. The property was stored in Mississippi. The cotton was released under Mississippi law on duplicate receipts. The cotton was grown, harvested and baled in Mississippi. In fact, everything with reference to the transaction occurred within this state, except the sale of stolen warehouse receipts.
It has been said:
"* * * The broad, uncontroverted rule is that the lex loci will govern as to all matters going to the basis of the right of action itself, while the lex fori controls all that is connected merely with the remedy. The courts will assume that a case is to be governed by the laws of the forum unless it is expressly shown that a different law applies, and in case of doubt as to whether the lex loci or the lex fori should govern, the court will naturally prefer the laws of its own state or country." 16 Am.Jur.2d, Conflict of Laws § 11 (1964).
We are therefore constrained to hold that the laws of the State of Mississippi are applicable to the issue before the Court and that the trial court was correct in so holding. The judgment of the trial court should be and is hereby affirmed.
Affirmed.
ETHRIDGE, C.J., and JONES, BRADY and SMITH, JJ., concur.