BUNGE CORPORATION, Plaintiff,

v.

D. A. BIGLANE, d/b/a Scotland Plantation, Defendant.

Civ. A. No. W75–21(N).

United States District Court,
S. D. Mississippi, W. D.

June 17, 1976.

**1160**

Jerome C. Hafter, Charles S. Tindall, III, Greenville, Miss., for plaintiff.

John T. Green, Natchez, Miss., for defendants.

## MEMORANDUM OPINION

NIXON, District Judge.

This diversity suit was filed by Bunge against D. A. Biglane, d/b/a Scotland Plantation, for damages in the amount of $15,-100.00 which the plaintiff claims it suffered as a result of the breach of an alleged oral contract entered into between the plaintiff and the defendant on July 2, 1974 for the future delivery of 10,000 bushels of No. 1 yellow soybeans at $5.70 per bushel to be delivered at the plaintiff's grain elevator in Jonesville, Louisiana. The defendant has denied entering into a contract with Bunge.

The defendant's Motion for Summary Judgment was overruled by this Court on August 13, 1975, and a Pretrial Order was filed herein on August 18, 1975. This case was submitted to the Court on the Pretrial Order, a Stipulation entered into between the parties. the testimony taken in this matter by agreement on August 28, 1975 by way of depositions (the depositions of several witnesses bound in one volume and entitled "Depositions in Proceedings in Above Cause") and the deposition of D. A. Biglane taken on August 21, 1975. At the conclusion of the deposition testimony on behalf of the plaintiff, the defendant moved for a Judgment Pursuant to Rule 50(a) F.R. Civ.P., which is hereby denied pursuant to the teachings of *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir. 1969), and its progeny.

## THE ISSUES

The issues before this Court are: (1) Whether under the Mississippi Conflict of Laws Rule, the law of the State of Mississippi or of Louisiana is to be applied in determining the ultimate issue before this Court, and (2) the legal rights and obligations of the parties under the applicable state law.

## THE FACTS

The plaintiff, Bunge Corporation (Bunge), is a New York corporation qualified to do business in the states of Mississippi and Louisiana and engaged in the buying, selling, storing and transporting of grain commodities, including soybeans. It has various regional offices, one of which is located in Greenville, Mississippi, under which it operates approximately nine elevators, one of which is the Bunge elevator located in Jonesville, Louisiana, through which it allegedly contracted with the defendant, through his employee, Mrs. Gay West, on July 2, 1974 for the purchase and fall delivery of soybeans. The defendant, D. A. Biglane, is an adult resident citizen of Natchez, Mississippi where he maintains his office, which is the headquarters for his primary occupation, the exploration for and production of oil and gas as an independent operator through various corporations owned by himself and his children.

The defendant also conducted a farming operation, i. e., raising cattle and growing cotton and soybeans, as well as some wheat and corn, on Scotland Plantation, which was owned by his children and leased by him from them. Scotland Plantation, which is located in Vidalia, Concordia Parish, Louisiana, consists of 3200 acres, approximately 2300 of which are suitable for cultivation, and is operated by Mr. Biglane's farm manager, a Mr. Vestal, who supervises the work of other employees ranging in number from 4 or 5 during the winter months to 9 to 12 during the summer. One of these other employees who worked under Vestal, who was in charge of the overall operation including the growing of crops, was Mrs. Gay West, an office employee who began working part time for the defendant in 1968, initially keeping cattle production and related records at his main office in Natchez, and subsequently in 1970 began working at the farm office in Vidalia. In 1972, Mrs. West began keeping all records of crops grown and sold, at Scotland.

Biglane owns farm equipment and capital improvements at his Louisiana farm which have an original cost value in excess of $700,000, including grain bins capable of storing 16,000 to 20,000 bushels of soybeans. All of the crops grown at Scotland, including the soybeans, were sold by Biglane to commercial buyers within the state of Louisiana. During the five-year period commencing 1970 through 1974 the defendant has received income from the sale of agricultural commodities grown on his Louisiana farm, ranging from a low of $180,946.35 to a high of $509,927.48. His annual income from the sale of soybeans alone ranged from a low of $21,455.02 to a five-year high of $163,188.43 in 1974, the year of this contract dispute. Biglane's income from the sale of soybeans represented between 2% and 12% of his total gross income for the above five years.

During the years 1972 through 1974, and particularly in 1974, one of Mrs. West's responsibilities was to call various grain elevators within the state of Louisiana to determine from them the market price of soybeans, which information she would relay to Mr. Biglane, who would decide whether to sell and if so, in what quantity. Prior to and during 1974 she would regularly check several times a week with United Elevator and Tensus Grain Elevator as well as with Cargo in Louisiana, and she began checking prices with Bunge in May, 1974.

During the first part of June, 1974 on several occasions Mrs. West called Bunge's Jonesville, Louisiana elevator manager, Jack Bonner, to check soybean prices, and following a telephone call which she made to him on June 18, 1974, pursuant to the instructions of Biglane, she ascertained the price of soybeans to be $5.43 per bushel, which information she relayed to her employer who, in turn, instructed her to call

Bonner and tell him that Biglane wished to sell 5,000 bushels at that prevailing price. Bonner asked her where she wished the contract to be sent and she in turn told him that Mr. Biglane signed all the contracts and was the only one who could do so, and that it would have to be sent to him at Box 966 in Natchez for his signature. Pursuant to that telephone conversation Bunge sent a contract or confirmation document to Biglane who, in turn, signed it and returned it to Bunge at its Jonesville, Louisiana elevator on June 24. After the final delivery of the 5,000 bushels on June 28, an additional 881 bushels were delivered to Bunge for which it paid Biglane the then current market price of $5.51 since these additional bushels were considered a "spot" sale. Biglane was paid the proceeds of those sales by Bunge from which the soybean tax was deducted in accordance with § 69–9–5, Miss. Code of 1972.

Subsequent to the above transaction Mrs. West continued to frequently and regularly call various grain elevators, including Bunge in Louisiana, to obtain daily prices which they were offering for soybeans based on the market price in Chicago, and on July 2, 1974 she talked to Bonner of Bunge who quoted the price of soybeans at $5.70 per bushel. She in turn relayed this information to Mr. Biglane and pursuant to his instructions called Bonner again informing him that Biglane wished to sell 10,000 bushels of soybeans to Bunge to be delivered in October-November and asked him to send Biglane a contract. In answer to Bonner's question, she told him to send the contract to the same place that he had sent the previous one on June 18. Pursuant to the instructions of Biglane Mrs. West again called Bonner on July 2 to ask about moisture limitation and was told that the moisture limitations were 16%, that is, Bunge had the right to reject any beans with moisture in excess thereof. The testimony of West and Bonner is in agreement that no other specifics or terms or conditions of the proposed agreement were discussed between them. Mrs. West heard nothing further concerning the proposed sale of the 10,000 bushels of soybeans until she received a telephone call from Mr. Willingham, Bonner's assistant, who, because Bonner was on vacation, called her on July 15 to ask why Biglane had not signed and returned the contract or confirmation of the sale of the 10,000 bushels which had been sent to him at his Natchez address on July 2 and was admittedly received by him on July 5.

The defendant's refusal to sign the above contract or confirmation and deliver 10,000 bushels of soybeans pursuant thereto because of his alleged objection to certain terms and provisions of the proposed contract spawned this suit inasmuch as on July 2, 1974, relying upon what it contends to have been a valid oral contract entered into between Bunge and Biglane through Bonner and West, Bunge, through its assistant district manager of Greenville, Mississippi district, John Everitt, on July 2 sold the 10,000 bushels of October-November soybeans through its St. Louis office for "$6.015 delivered Destrahan, Louisiana November shipment", and on July 19 had to purchase 10,000 bushels elsewhere at the then increased current market price of $7.21 per bushel for delivery to its purchaser, resulting in a loss to Bunge of $15,-100.00.

## THE LAW

### The Choice of Law

■ The first legal question which must be decided in this diversity case is whether the substantive law of Mississippi or of Louisiana applies in determining the rights and obligations of the parties under the alleged July 2, 1974 oral telephonic contract which the plaintiff in its pleadings and post-trial brief relies upon as the basis for its claim against the defendant. Under the *Erie-Klaxon* [1] doctrine, a Federal Court sitting as a diversity court must apply the conflicts of law rules of the forum state, in this case, the conflicts of law rules of the

---

1. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon Co. v. Sten-* *tor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

State of Mississippi. *Whitaker v. Harvell-Kilgore Corp.,* 418 F.2d 1010, 1015 (5th Cir. 1969); *Mid-Continent Tel. Corp. v. Home Tel. Co.,* 319 F.Supp. 1176, 1187 (N.D.Miss. 1970). In its search for the answer to this question, it is the duty of the United States District Court to ascertain what the state law is, not what it ought to be; otherwise we would be formulating the legal policy and mind of the state in an area if there is already a clearly enunciated state rule. *Klaxon Co. v. Stentor Electric Mfg. Co., supra; Ideal Structures Corp. v. Levine Huntsville Development Corp.,* 396 F.2d 917, 922–923 (5th Cir. 1968); *Spector Motor Service, Inc. v. Walsh,* 139 F.2d 809, 823 (2nd Cir. 1943) (dissent), *vacated* 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944).

Since the dealings of the parties upon which this suit is based constitute "commercial" dealings or transactions which took place subsequent to the effective date of the adoption of the Mississippi Uniform Commercial Code (MUCC), § 75–1–101 et seq., Code of 1972, on March 31, 1968, § 75–1–105(1) is germane to this inquiry. Its pertinent provision reads:

> (1) Except as provided hereinafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement, this code applies to transactions bearing an appropriate relation to this state.

Since the alleged oral contract did not encompass any agreement as to which state law would apply, this Court sitting as a Mississippi Court must ascertain whether the Mississippi Supreme Court has judicially interpreted the phrase "appropriate relation" either directly or by implication and if so, to apply it to the facts of this case. In the event that the Court has not defined the foregoing phrase, the judicial conflict of law rule of Mississippi is determinative.

Prior to the adoption of the MUCC, in the absence of an intention expressed by or fairly attributable to the parties, Mississippi has applied the law of the state in which the contract was made, "made" being defined as signed and accepted. *Hartford Accident & Indemnity Co. v. Delta & Pine Land Co.,* 188 So. 539 (Miss.1939). However, if the contract was to be performed in a state other than the one in which it was made, Mississippi ordinarily applies the law of the state of performance. *English v. Insurance Co. of North America,* 270 F.Supp. 713, 716 (N.D.Miss.1967), aff'd., 395 F.2d 854 (5th Cir. 1968).[2]

In 1968, in an opinion which postdates the adoption of the MUCC but decided the rights of the parties prior to its adoption, the Mississippi Supreme Court in *Craig v. Columbus Compress & Warehouse,* 210 So.2d 645 (Miss.1968) adopted the "center of gravity" or "contacts" doctrine which is a rule requiring courts trying an action to apply the law of the place which has the most significant relationship to the event and parties, or which, because of the relationship or contacts with the events and parties, has the greatest concern with the specific issues governing their rights and liabilities. *Id.* at 649; *Mid-Continent Telephone Corp. v. Home Telephone Co., supra* at 1187–1188. In *Craig,* in which it was held that where warehouse receipts were Mississippi contracts and all of the interested parties were in Mississippi in which occurred the theft of receipts for cotton stored in Mississippi warehouses, the laws of Mississippi rather than the laws of Tennessee were applicable and prevented passage of title despite the fact that the stolen warehouse receipts were negotiated in Tennessee. The Mississippi Supreme Court held that the law of Mississippi was applicable under the facts of that case for two reasons: "First: the general law through-

---

**2.** For an excellent discussion of the applicable Mississippi conflict of law rules to contracts, see Crawley, "Conflict of Laws in Mississippi as to Contracts", 14 Miss.L.J. 240–256 (1942) and Wilkins, "Conflict of Laws—Conditional Sales Contract—Lex Loci Contractus to Govern," 37 Miss.L.J. 478–480 (1966).

out the country favors the application of the law where the property is located, . . . Second: In recent years there is a trend in some state and federal courts to adopt the 'center of gravity doctrine.' "

In *Dunavant Enterprises, Inc. v. Ford,* 294 So.2d 788 (Miss.1974), the Court was called upon to decide whether the Uniform Commercial Code of Mississippi or of Tennessee was applicable to the contract in question because Tennessee, in adopting the Uniform Commercial Code, did not adopt the section dealing with *force majeure,* whereas Mississippi did. In affirming the lower court which held that the seller of cotton to be grown, harvested and delivered in Mississippi was excused from delivering cotton which he was unable to plant because of *force majeure* (excessive rain and cold weather), the Mississippi Supreme Court stated:

It is also argued that since the contract was executed in Tennessee that it should be construed in accordance with the Tennessee law. The reason for this argument is that Tennessee in adopting the Uniform Commercial Code did not adopt the section dealing with *force majeure.* We are of the opinion that the chancellor was correct in applying the law of this state. Although the contract was executed in Tennessee the cotton was to be grown, harvested and delivered in Mississippi. (The Supreme Court then quoted § 75–1–105, Miss.Code 1972).

The contract contained no agreement as to which state law would apply. Therefore it was for the determination of the trial court which law it would apply. It cannot be successfully argued that the transaction does not bear reasonable relation to this state. The holding of the trial court is consistent with the pronouncement of this Court on the "center of gravity" doctrine. *See Craig v. Columbus Compress & Warehouse Co.,* 210 So.2d 645 (Miss.1968).

294 So.2d at 791. *See also Mid-Continent Tel. Corp. v. Home Tel. Co., supra* at 1187–88.

■ Although *Dunavant Enterprises* deals with the construction rather than the validity of a contract, it nevertheless appears clear to this Court that the Mississippi conflict of law rule is that the choice of law governing the validity and construction of a contract is dictated and controlled by the "center of gravity" or "most significant contacts" doctrine.

This rule has been adopted in the Restatement, Second, Conflict of Laws. Section 188 of the Restatement provides that the contacts to be considered in determining the applicable law in the absence of a choice of law by the parties include (a) the place of contract, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. It further provides that if the place of negotiating the contract and the place of performance are the same, the local law of that state usually will be applied. Section 200 reaffirms the rule of § 188, as Section c of the Comment thereto indicates:

. . . If the place of negotiating the contract and the place of performance are in the same state, the local law of that state will usually be applied to determine issues of validity. This is because this state in the majority of instances will have the dominant interest in the determination of issues arising under the contract.

■ We now examine the facts of the case sub judice to determine whether the "center of gravity" of the relationships and dealings of the parties was in the state of Mississippi or in the state of Louisiana in order to determine which of the two states' laws are applicable and decisive of the issues.

The only "contacts" or relationship that the transaction in question had with the state of Mississippi are the facts that (1) the defendant, D. A. Biglane, was a resident citizen of Natchez, Mississippi, where he maintained his principal office for conducting his primary business or venture, oil

exploration and production activities, and (2) the regional or district office of the plaintiff, Bunge, a New York corporation qualified to do business in the states of Mississippi and Louisiana, was located in Greenville, Mississippi, within which district nine grain elevators are located, including the one at Jonesville, Louisiana, managed by Jack Bonner.

On the other hand, the record is clear that the following significant and relevant contacts and negotiations took place in Louisiana: (1) all negotiations of the purported contract in issue took place in Louisiana between Mrs. Gay West, the Scotland office employee of the defendant, and Jack Bonner, the manager of the plaintiff's Jonesville, Louisiana grain elevator without any participation whatsoever by D. A. Biglane or any of his agents or employees who lived or worked within the state of Mississippi; (2) the alleged oral contract upon which this suit is based was entered into within the state of Louisiana by Bonner and West; (3) the location of the subject matter of the purported contract was soybeans to be grown on Scotland plantation in Louisiana; (4) the place of performance was to be Jonesville, Louisiana where the soybeans were to be delivered to Bunge which in turn resold them for delivery at Destrahan, Louisiana; (5) there is no evidence of record that Biglane sold any beans or other crops grown by him or his tenants in Louisiana except within the state of Louisiana; and (6) the offices of the plaintiff and defendant which conducted negotiations and purportedly entered into the oral contract are located in Louisiana.

Thus, the "center of gravity" of the dealings, negotiations and contacts between the plaintiff and defendant was Louisiana inasmuch as it was the place of the making of the alleged contract for the delivery therein of the subject matter thereof, beans, to be grown and harvested in that state. It follows that under the Mississippi Conflicts rule, Louisiana substantive law is controlling and determinative of the rights and obligations of the parties, and more specifically, the existence, vel non, of the purported oral contract. *Cf. Bache & Co., Inc. v. International Controls Corp.,* 339 F.Supp. 341, 347–348 (S.D.N.Y.1972), *aff'd. per curiam,* 469 F.2d 696 (2nd Cir. 1972); *United Overseas Bank v. Veneers, Inc.,* 375 F.Supp. 596, 600–602 (D.Md.1974).

## LOUISIANA SUBSTANTIVE LAW

The plaintiff's cause of action is based solely on an alleged oral telephonic contract entered into between Bunge through Jack Bonner and the defendant Biglane, through his Louisiana office employee, Gay West, inasmuch as there was no direct personal contact or negotiations with the defendant by anyone on behalf of Bunge.

■ The burden of proving the existence of a contract and the terms thereof is on the asserting party. *The Hunter Co. v. Commissioners,* 115 So.2d 226 (La.App. 2d Cir. 1959), and where, as here, plaintiff contends that a valid contract was effectuated between it and the defendant, through the latter's agent, it must prove by a preponderance of the evidence that the purported agent had either actual or apparent authority to bind his principal. This burden extends not only to proof of the existence and nature of the agency, but also its extent or scope. *Federal Ins. Co. v. C&W Transfer & Storage Co.,* 282 So.2d 563 (La. App. 4th Cir. 1973); *Builders Center, Inc. v. Smith,* 228 So.2d 245 (La.App. 1st Cir. 1969).

■ It is also well established in Louisiana that whoever deals with an agent is put on his guard by that very fact and does so at his own risk. It is his right and duty to inquire into and ascertain the nature and extent of the powers of the agent and determine whether the act or contract about to be consummated comes within the province of the agency and will bind the principal. *Buckley v. Woodlawn Development Corp.,* 233 La. 662, 98 So.2d 92 (1957); *Gill Truck & Trailer Rental, Inc. v. Hunter Truck Lines, Inc.,* 283 So.2d 509, 511 (La. App. 1st Cir. 1973).

Bunge's contention that Mrs. West had actual authority to bind Mr. Biglane in this type transaction is based upon the following

facts: (1) that Biglane, himself, did not deny her authority to do so until after this litigation arose; (2) that she admitted in her testimony "that people were accustomed to dealing with Biglane through her because they knew that she was his employee and that any message she conveyed had come from him;" (3) that there is no evidence that other persons who dealt with West were required by Biglane to obtain his approval or ratification of her acts and representations; and (4) that Mrs. West, alone, handled and resolved the dispute with Cross-United Grain Elevator in connection with its misconception that Biglane had sold his one-fourth of a quantity of beans stored with his tenant farmers' at Cross when it was time to deliver to Bunge under the June 18, 1974 transaction.

Bunge's argument that West had ostensible authority to contract for Biglane on July 2 is based upon the foregoing facts, and her prior course of dealing with others, including Bunge as the representative of Biglane. More specifically, the plaintiff contends that because West (1) constantly sought price quotations on soybeans and other products for various grain elevators pursuant to the instructions of Biglane; (2) relayed his messages to these elevators; (3) represented and spoke for him in connection with the June, 1974 sale made by Biglane to Bunge; and (4) failed to deny her authority to act for and on behalf of Biglane in connection with the purported contract of July 2, she was clothed with the apparent or ostensible authority to contract for the defendant.

Since the bases for Bunge's actual and apparent authority arguments are intertwined and in part identical, they will be discussed together.

■ Initially, this Court finds that Bunge has failed to prove any explicit oral or written designation by Biglane of Mrs. West as his agent with authority to contract for and legally bind him with reference to the July 2, 1974 oral contract or any other contract for the sale of any grain, including soybeans. Neither Biglane nor West ever expressly stated to any representative of Bunge or anyone else that West had the authority to contractually bind Biglane. On the contrary, this Court finds, in accordance with the testimony of Mrs. West, that in connection with the negotiations of the June 18, 1974 sale, in response to Bonner's question concerning where he should send the contract for execution, she told him that he would have to send it to Biglane at Box 966 in Natchez, Mississippi, because he was "the only one who signed contracts and that he signed all contracts." Bonner followed those instructions and sent the June contract to Biglane, who executed it and returned it to Bonner in Jonesville, after which the soybeans were delivered.

Bonner admitted that during the July 2, 1974 telephone conversations he and Mrs. West discussed no specific terms of the purported sale, including market scale of discount at the time of delivery, seller's warranties, and other terms and provisions listed in Items 1 through 12 of the instrument which was sent by Bonner to Biglane at his Natchez, Mississippi address for execution pursuant to the instructions of Mrs. West.

The above facts not only fail to prove any representations to Bunge that Mrs. West had the apparent or ostensible authority to contract for and bind Mr. Biglane, but on the contrary, indicate that both she and Bonner recognized that Biglane alone had that authority.

Bunge likewise failed to offer any proof that Mrs. West ever consummated any sale by Biglane to any other grain elevator. West's discussions and dealings with other grain elevators do not constitute actual or apparent authority to contract for Biglane. There is an absence of proof that the employees of the other grain elevators with whom she had discussions were led to believe that she could bind her employer.

■ Bunge contends that Mrs. West's apparent or ostensible authority to contract for Biglane is evidenced by the fact that she alone dealt with the Cross grain elevator in resolving their above discussed mis-

understanding. This argument is without merit inasmuch as she was merely conveying to Cross Biglane's explanation that it was mistaken, and did not constitute a representation that she had authority to contractually bind or consummate the sale of soybeans for him. *Cf. Buckley v. Woodlawn Development Corp., supra; Gill Truck & Trailer Rental, Inc. v. Hunter Truck Line, Inc., supra.* Furthermore, the plaintiff failed to prove that on July 2 Bonner was aware of or relied on Mrs. West's role in the Biglane-Cross matter. Since the doctrine of apparent authority requires that the principal make manifestations to a third party in some form and that the third party reasonably rely on the agent's purported authority as a result of these manifestations by the principal, Bunge's contention is not meritorious. See *Krautkramer Ultrasonics, Inc. v. Port Allen Marine Service, Inc.,* 248 So.2d 336 (La.App. 4th Cir. 1971).

For the foregoing reasons this Court finds that on July 2, 1974 Mrs. Gay West had no actual or apparent authority to contractually bind the defendant Biglane to sell soybeans to Bunge, and the defendant is thus not liable to plaintiff in the absence of a ratification by him or estoppel on his part to deny the existence of a contract.

Louisiana has not adopted the Uniform Commercial Code with its special Statute of Frauds provision relating to confirmed oral contracts between merchants, as has Mississippi with the adoption of Section 75–2–201, Mississippi Code of 1972,[3] which this Court finds would be applicable to this transaction if Mississippi substantive law controlled, inasmuch as the relatively large farming operation of the defendant and the extent of the sales of his farm products based upon the prevailing market price which he kept

constantly abreast of, constitute him a "merchant" within the scope of the M.U. C.C. See *Continental Grain Co. v. Harbach,* 400 F.Supp. 695 (N.D.Ill.,1975); *Continental Grain Co. v. Martin,* No. B–73–CA–230 (E.D.Tex., Jan. 16, 1975); *Sierens v. Clausen,* 60 Ill.2d 585, 328 N.E.2d 559 (1975); *Ohio Grain Co. v. Swisshelm,* 40 Ohio App.2d 203, 318 N.E.2d 428 (1973); *Barron v. Edwards,* 45 Mich.App. 210, 206 N.W.2d 508 (1973); *Ohio Grain Co. v. Beery,* No. 21603, C.P. (Union Cty., Ohio, Apr. 30, 1974); *but cf. Cook Grain v. Fallis,* 395 S.W.2d 555 (Ark.1965).

Contracts of sale in Louisiana are regulated by the applicable provisions of the "Law of Sales and Conventional Obligations" Codified in the Louisiana Civil Code. See Arts. 2438–2441, La.Civ.Code. Art. 2277 provides:

All agreements relative to movable property, and all contracts for the payment of money, where the value does not exceed five hundred dollars, which are not reduced to writing, may be proved by any other competent evidence; such contracts or agreements above five hundred dollars in value, must be proved at least by one credible witness, and other corroborating circumstances.

It has been held that the "one credible witness" may be the plaintiff or its employee, *see e. g. Lanier v. Alenco,* 459 F.2d 689 (5th Cir. 1972); *Great Marine Corp. v. Vinet,* 217 So.2d 480 (La.App. 1st Cir. 1968), *writ denied,* 253 La. 739, 219 So.2d 515 (1969), and corroboration need only be general, that is, tend to prove the existence of an agreement, may be circumstantial in nature and need not corroborate any specific item in the agreement. *Lanier v. Alenco,*

---

**3.** Section 75–2–201 provides, in pertinent part:

(1) Except as otherwise provided in this section, a contract for the sale of goods for the price of five hundred dollars ($500.00) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

· · · ·

(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten (10) days after it is received.

*supra; Aydell v. Fontaine Abbott Construction Co.,* 274 So.2d 484 (La.App. 1st Cir. 1973). We are of the firm opinion that the proof requirement of Art. 2277 is not lacking and would not foreclose the plaintiff from recovering on its ratification thereof if otherwise proved by a preponderance of the evidence.

Turning now to the question of whether the plaintiff has in fact proved ratification by the defendant, Arts. 1816 and 1817, La. Code, create legal presumptions of acceptance of an offer because the offeree has either acted affirmatively in response to the offer or has received and accepted the fruits of the contract while remaining inactive and silent. Art. 1818 provides that where the law does not create a legal presumption of consent from certain facts, then, as in the case of other simple presumptions, it must be left within the discretion of the judge whether assent is to be implied.

■ It is the contention of the plaintiff that by failing to immediately repudiate the alleged agency of Mrs. West, the defendant ratified her authority to enter into the purported oral contract with Bonner. Under certain circumstances, failure to repudiate the ultra vires act of one purporting to act on behalf of another can result in the ratification of the act; however, in such cases, it is generally true that the principal not only had full knowledge of the act of the agent but also accepted the benefits thereof. *See, Ledoux v. Old Republic Life Ins. Co.,* 233 So.2d 731, 736 (La.App. 3rd Cir.), *writ denied,* 256 La. 372, 236 So.2d 501 (1970). In the case sub judice, however, not only is there absence of proof of any authority of Mrs. West to bind Mr. Biglane to sell the soybeans to the plaintiff, but there is no evidence that the defendant received benefits therefrom, although the price of soybeans had risen rapidly by the middle of July when for the first time the assistant manager of Bunge's Jonesville elevator contacted Biglane to determine why he had not signed and returned the contract which had been sent to him some two weeks earlier and was told by the defendant that he would not sell because he was dissatisfied with various provisions of the written instrument, including the maximum acceptable moisture level and the designation of "Number One Yellow Soybeans" as distinguished from "Yellow Soybeans" which Biglane through Mrs. West had expressed his interest in selling. At no time had Bonner or any other agent or employee of Bunge contacted Mr. Biglane with reference to the alleged sale until the middle of July. Although Mrs. West did not state to Bonner that she had no authority to contract for Biglane, or was not acting as his agent, at no time did she state that she was authorized to do so, and as previously noted, had informed Bonner on June 18 that only Mr. Biglane had authority to sign contracts. Additionally, as admitted by Bonner, no specific terms of the purported contract were discussed or agreed upon by Bonner and West, which tends to dispel the plaintiff's apparent or ostensible authority argument. *Gill Truck & Trailer Rental, Inc. v. Hunter Truck Lines, Inc., supra* at 511.

■ Bunge cannot prevail on the doctrine of equitable estoppel since it failed to inquire re Mrs. West's authority in connection with the transaction in question. *Id.*

## CONCLUSION

Based upon the foregoing findings of fact and applicable Louisiana law, we conclude that Mrs. Gay West had no actual or apparent authority to and did not contract for the defendant to sell the soybeans in question; that if she did do so, it was an ultra vires act which was not ratified by the defendant; and that the defendant is not legally or equitably estopped from denying Mrs. West's authority by virtue of any action or inaction on his part.

The plaintiff is thus not entitled to a judgment against the defendant, and the defendant is entitled to have this action dismissed at the cost of the plaintiff.

A Judgment conforming with the foregoing findings of fact and conclusions of law shall be presented to this Court in the form and within the time prescribed.