**J. RUSSELL FLOWERS, INC., Plaintiff,**

v.

**ITEL CORPORATION, Defendant.**

**No. GC 79–112–S–P.**

United States District Court,
N. D. Mississippi,
Greenville Division.

June 6, 1980.

Joel J. Henderson, Lane & Henderson, Greenville, Miss., for plaintiff.

Lawrence D. Wade, Campbell & DeLong, Greenville, Miss., Lanny B. Bridgers, King & Spalding, Atlanta, Ga., for defendant.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action is before the court upon the plaintiff's motion for partial summary judgment as to liability, and the defendant's cross-motion for summary judgment. The parties have supported their respective motions with exhibits and affidavits, and have also submitted supporting and opposing memoranda. The matter is now ripe for decision.

The plaintiff, J. Russell Flowers, Inc., is a corporation organized and existing under the laws of the State of Mississippi. The defendant, Itel Corporation, is a Delaware corporation authorized to do business in Mississippi. Jurisdiction is founded upon diversity of citizenship, and the amount in controversy exceeds $10,000, exclusive of interest and costs. Flowers contends that, after lengthy negotiations between the parties, it entered into a contract with Itel on February 26, 1979. This alleged contract is evidenced by a letter from W. Ted Moore, an authorized representative of Itel, to Clayton J. Swank, III, Executive Vice-President of Flowers. The letter states that "Itel is pleased to offer" certain terms of lease financing to Flowers for 45 barges. It states the terms of the financing, and then states that the "financing is firm, however, it will be reduced to a more definitive document within 30 days." This sentence was revised from the original language of the letter, which stated that the financing was "subject only to an execution of a more definitive document to be approved by both

parties." The revision is initiated by Moore and Swank, and the letter is signed by both parties.

Flowers contends in its complaint that this letter is firm as to all major provisions of the lease financing to which the parties agreed, and that only the "non-essential" provisions of the agreement were to be included in the second document. The parties conducted further negotiations as to this document, which negotiations extended beyond the 30-day period established in the letter of February 26, 1979. A draft of this document, which is termed the "Vessel Operating Lease", was prepared by Itel and forwarded to Flowers' counsel. Several pages of this draft contain marginal notations made by counsel and by Charles Aebel, Vice-President for Finance and Administration of Flowers. These notes indicate areas in which Flowers disagreed with the language used by Itel. Even after the parties met to conduct further negotiations, there was disagreement over certain terms of the lease. On May 29, 1979, Mr. Swank, who was now President of Flowers, wrote to Mr. Moore, accepting "the latest negotiations . . . as a firm and binding contract." Counsel for Flowers also wrote Mr. Moore, requesting that Itel advise them of the delivery date of the barges. In reply to these letters, counsel for Flowers received a letter from counsel for Itel, stating that "no contract, either oral or written, has ever arisen between Itel or any of its representatives on the one hand and Messrs. Swank or Flowers or Flowers Transportation, Inc. . . . or any party representing you or them on the other." Plaintiff contends that this correspondence indicates an anticipatory repudiation of the alleged contract. Plaintiff considered this repudiation to be final, and now seeks specific performance or, alternatively, remedies for breach of contract.

In its motion for partial summary judgment, Flowers takes the position that the conduct of the parties indicates a clear intention that the letter of February 26 was a contract to deliver barges. The terms which were to be embodied in the "more definitive document" related only to the operation of the barges, and did not vary the terms of the February 26 agreement. Flowers contends that a failure to reach agreement on the terms of the operating lease did not affect the binding commitment to deliver the barges under the financing terms previously agreed upon. According to the plaintiff, then, this preliminary agreement is definite as to all essential terms and is, therefore, an enforceable contract.

The defendant, in response to the plaintiff's motion and in support of its own motion for summary judgment, contends that there can be no distinction between a contract to deliver and a contract to operate, when certain terms which are essential to the agreement remained unresolved throughout the course of negotiations. Since there was no final agreement as to essential terms, Itel contends that there can be no binding contract. Itel has submitted the affidavit of Edwin H. Clock, who was counsel for Itel during the negotiations. He states that during the negotiations surrounding the operating lease, there were at least 12 material points over which the parties disagreed. These points involved such provisions as standards for operation, assignability of warranties, casualty occurrences, and regularity of maintenance procedures. The letter of February 26 addresses none of these points, and Itel contends that the letter cannot stand by itself as a binding contract. Flowers, on the other hand, states that even if the letter is not sufficient by itself, the letter of May 29 from Swank to Moore was an acceptance of the "latest negotiations" which had taken place between the parties.

■ The material facts relating to the process of negotiations between the parties and the relevant correspondence are undisputed. The depositions and other discovery documents indicate that there is no genuine issue of material fact. The crucial question in this action is the legal conclusion which the court must draw from these facts. In other words, what, if any, is the legal effect of the February 26 letter? The language of

the letter speaks for itself, and is undisputed, as is the language of the letters written afterwards. The conduct of the negotiations following February 26 is also undisputed, since both parties admit that the operating lease contained provisions which were the subject of dispute. Of course, the court recognizes that summary judgment under Rule 56 is only appropriate if everything in the record demonstrates that no genuine issue of material facts exists. *See Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980). It is also true that the question of whether or not a writing is to be given effect as a contract is one for the court to ascertain from the surrounding circumstances. *Jones v. Mississippi Farms Co.*, 116 Miss. 295, 76 So. 880, 884 (1917). However, the court's interpretation must be consistent with recognized legal principles. *Byrd v. Rees*, 251 Miss. 876, 171 So.2d 864, 867 (1965).[1] The crucial question here is whether or not the letter of February 26, 1979, constituted a binding contract. There are no genuine issues of material fact relating to that particular question, and to answer it requires an analysis of some basic principles of contract law.

■■■ One of those basic principles upon which the plaintiff relies is that where all of the substantial terms of a contract have been agreed upon the fact that the parties contemplated a formal document at a later date does not render the initial transaction ineffective. *Mid-Continent Telephone Corp. v. Home Telephone Co.*, 319 F.Supp. 1176, 1189 (N.D.Miss.1970). In order for such an agreement to be given effect, however, there must be evidence of an agreement as to all material terms. *Betty Lee*

*Shoes, Inc. v. Karl's Shoe Stores, Ltd.*, 293 F.2d 429, 432 (5th Cir. 1961). The law favors a determination that an agreement is definite as to all material terms and it will not fail for indefiniteness if the court can ascertain the terms from the document itself or from all the circumstances. *Mid-Continent Telephone Corp. v. Home Telephone Co.*, 319 F.Supp. at 1192; *Jones v. McGahey*, 187 So.2d 579 (Miss.1966). Of course, as in all other cases of contractual interpretation, the intentions of the parties will control, but generally the court should look only to the four corners of the instrument itself. *Robinson v. Martel Enterprises, Inc.*, 337 So.2d 698, 701 (Miss.1976).

■■ The letter of February 26 from Moore to Swank states that Itel "is pleased to offer the following lease financing. . . . ." It goes on to state the terms of that financing, and then it states that the financing is firm; "however, it will be reduced to a more definitive document within 30 days." The court is of the opinion that, by the very language of this letter itself, the parties did not intend for the letter to operate as a contract to deliver the barges. The letter addressed itself to financing only, and it openly contemplated further negotiations as to a "more definitive document." It cannot be said, on the basis of this letter, that all material provisions have been agreed upon, and that there is nothing left for future settlement. The transaction as it stood on February 26 was incomplete; it cannot be given legal effect.

In *Mid-Continent Telephone*, the court suggested certain criteria or circumstances which would indicate the parties' intention to be bound by a preliminary agreement:

---

1. The parties have not addressed themselves to the question of which state's law this court should apply in determining whether or not the February 26 letter is a contract. Under the doctrine of *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477, 1480 (1941), a district court must apply the conflicts of law rules of the forum state. Since this court is called upon to construe the validity of the letter, it should apply the law of the state which has the most significant relationship to the event and the parties. *Bunge Corp. v. Biglane*, 418 F.Supp. 1159, 1163 (S.D.Miss.1976); *Craig v. Columbus Compress*

*& Warehouse*, 210 So.2d 645, 649 (Miss.1968). In this case, although negotiations took place between Mississippi and California, it would appear that the parties conducted several meetings in Mississippi, that the barges were to be delivered at the plaintiff's place of business in Mississippi, and that the letter was "accepted" by Swank in Mississippi. It would also appear that the equipment covered by the lease was to be used by the plaintiff in its business in Mississippi. Based on these circumstances, the court is of the opinion that Mississippi law would govern in this action.

whether the contract is usually one put in writing; whether there are few or many details; whether the amount involved is large or small; whether it requires a formal writing for a full expression of the covenants and promises; and whether the negotiations themselves indicate that a written draft is contemplated as the final conclusion of the negotiations.

319 F.Supp. at 1189. Here, the letter itself contemplates a formal document. The amount involved in the financing is quite large, and there are relatively few details in the letter itself. From the undisputed facts in this case, there can be no doubt that the parties contemplated a future agreement on all other details of this transaction. The record reveals these details to be so material to the entire transaction, that the letter cannot by itself be given legal effect.

Nor can Swank's letter of May 29, 1979, purporting to accept the negotiations as binding, be construed as an enforceable contract. The terms of this alleged agreement are not found in that letter or any other, and they are not necessarily found in the draft of the Vessel Operating Lease, for it is not shown that the parties had come to an agreement. There is, in short, no evidence of a mutual manifestation of consent by the parties to enter into a contract at this point. The necessary elements of a binding contract are missing, for there is no clear, definite, and complete offer, *Williams v. Favret*, 161 F.2d 822, 824 (5th Cir. 1947), and there is no evidence that the parties agreed as to all terms of the contract. *Hollister v. Frellsen*, 148 Miss. 568, 114 So. 385, 386 (1927).

For these reasons, the court is of the opinion that the letter of February 26, 1979, even if it was a preliminary agreement or "contract to make a contract", cannot be given legal effect. The plaintiff's motion for partial summary judgment will be denied, and the defendant's motion for summary judgment will be sustained. The clerk will be directed to enter a final judgment in favor of the defendant, dismissing the plaintiff's complaint and taxing the costs of the action to the plaintiff.