Joseph **BOARDMAN** and Henry **Boardman,** Plaintiffs-Appellants,

v.

**UNITED SERVICES AUTOMOBILE ASSOCIATION,** Defendant-Appellee.

No. 83–4310.

United States Court of Appeals, Fifth Circuit.

Sept. 14, 1984.

Harry R. Allen, Billy W. Hood, Gulfport, Miss., for plaintiffs-appellants.

Ben F. Galloway, Sherman Muths, Jr., Gulfport, Miss., for defendant-appellee.

Before BROWN, GEE, and WILLIAMS, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This diversity case presents questions of Mississippi law on which Mississippi should have the final answer and for which Mississippi affords the means to obtain that answer. Guided by the great principles of federalism, we defer decision and certify decisive questions to the Supreme Court of Mississippi,[1] pursuant to its Rule 46, adopted August 1, 1980.

Our problem—choice of law, Mississippi or Nebraska—arises out of the following situation. Plaintiff-Appellant Joseph Boardman, age 19, was a student in Mississippi during the 1978–79 school term. During the summer of 1979 he worked in Gulfport, Mississippi for his uncle. While at school, Joseph had been permitted by his father to operate an automobile which was insured under his father's insurance policy issued by defendant United Services Auto-mobile Association (USAA). Joseph Boardman drove this automobile until his father delivered it to Joseph's sister. After Joseph no longer had the car, Henry Boardman requested USAA to remove Joseph as a named insured from his automobile insurance policy.

On June 20, 1979, Joseph Boardman purchased a 1970 Chevrolet Caprice from an automobile dealer in Gulfport, Mississippi. He applied for a title and purchased and obtained a Mississippi license tag for his car. After Joseph purchased this particular automobile he discussed with his father having it insured by USAA, but no insurance was purchased, nor was any notice of the acquisition of a new vehicle given to USAA prior to Joseph's accident on July 8, 1979. Thus, prior to the date of the accident, Joseph's 1970 Chevrolet was never added to the policy of his father, nor was any premium paid for coverage under any other insurance contract. Joseph's claim for compensation for his personal injuries arising out of an accident with an uninsured motorist was denied by USAA under the policy's exclusionary clause on the grounds that Joseph was driving a motor vehicle which Joseph solely owned, which was not an insured vehicle as defined under the USAA policy of his father.[2]

---

1. See generally In re McClintock, 558 F.2d 732, n. 2, 3, 4, and 5 (5th Cir.1977) and cases cited; J. Brown, Certification—Federalism in Action, 7 Cum.L.Rev. 455 (1977) (tracing the development of the certification doctrine and the Court's care to avoid "wearing out its welcome" by an apparent practice of ducking troublesome state law questions). Of the certification procedure, then Chief Judge Godbold wrote: "both federal and state judicial systems are the beneficiaries of a procedure rooted in cooperative federalism." American Eastern Development Corp. v. Everglades Marina, 608 F.2d 123, 125 (5th Cir.1979).

2. PART IV—PROTECTION AGAINST UNINSURED MOTORISTS COVERAGE J—UNINSURED MOTORISTS (DAMAGES FOR BODILY INJURY):
To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile ...
DEFINITIONS: The definitions under Part I, except the definition of "insured", apply to Part IV, and under Part IV: "insured" means:
(a) the named insured and any relative;
(b) any other person while occupying an insured automobile;
(c) any person, with respect to damages he is entitled to recover because bodily injury to which this part applies sustained by an insured under (a) or (b) above.
"insured automobile" means:
(a) an automobile described in the policy for which a specific premium charge indicates that coverage is afforded,
(b) a private passenger, farm or utility automobile, ownership of which is acquired by the named insured during the policy period provided

Plaintiffs filed a motion for partial summary judgment, seeking an adjudication that there existed uninsured motorist coverage for Joseph's personal injuries under Henry Boardman's policy. They also sought an adjudication that the uninsured motorist benefits could be stacked under the terms and provisions of the automobile insurance contract for a total coverage of $60,000. Defendant USAA filed a cross motion for summary judgment seeking an adjudication that there was no uninsured motorist coverage for Joseph's accident. USAA also sought an adjudication that there could be no stacking even if the court found that the coverage existed and that the limitation on benefits available to Joseph Boardman was $10,000.00, the minimum statutory requirement of the Mississippi Safety Responsibility Act.

In its opinion, the District Court held that Mississippi law would be applied to the insurance contract under the Mississippi choice of law "center of gravity" test. The Court also held that (i) the exclusionary clause [3] relied upon by USAA was void as a violation of Mississippi public policy; (ii)

> (1) it replaces an insured automobile as defined in (a) above, or
> (2) the company insures under this Coverage all private passenger, farm and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company during the policy period or within 30 days after the date of such acquisition of this election to make the Liability and Uninsured Motorist Coverages under this and no other policy issued by the company applicable to such automobile,
> (c) a temporary substitute automobile for an insured automobile as defined in (a) or (b) above, and
> (d) a non-owned automobile while operated by the named insured; and the term "insured automobile" includes a trailer while being used with an automobile described in (a), (b), (c) or (d) above, but shall not include:
> (1) any automobile or trailer owned by a resident of the same household as the named insured,
> (2) any automobile while used as a public or livery conveyance, or
> (3) any automobile while being used without the permission of the owner.
> EXCLUSIONS: This policy does not apply under Part IV:

Joseph Boardman was an insured under the USAA policy; (iii) the contract of insurance existing between Henry Boardman and USAA provided uninsured motorist coverage to Joseph Boardman; and (iv) the language of the limitation of liability clause found in the policy was ambiguous, thus permitting stacking of the policy limits to provide a total uninsured motorist coverage of $60,000. The interlocutory appeal of USAA was granted on May 16, 1983.

 This diversity suit, filed in a Mississippi federal district court, requires that we apply the choice of law rules a Mississippi court would apply had the case been filed in a state court. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). While it is clear that the Mississippi Supreme Court in choice of law situations applies and recognizes the "center of gravity" test, such a decision under that test clearly applicable to the fact situation in this case eludes us.[4] While it is clear that under this approach, "the Court trying the action applies the law of the place which

> (a) to bodily injury to an insured while occupying an automobile (*other than an insured* automobile) *owned* by the named insured or a *relative,* or through being struck by such an automobile... (emphasis added).

**3.** *See supra* note 2.

**4.** As a partial example, the court has closely examined the following cases involving Mississippi choice of law principles for guidance in this matter: *Maryland Casualty Co. v. Integrity Insurance Co.,* 693 F.2d 506, 511 (5th Cir.1982); *Vicon, Inc. v. CMI, Corp.,* 657 F.2d 768 (5th Cir.1981); *FMC Finance Corp. v. Reed,* 592 F.2d 238 (5th Cir.1979); *Blue Bird Body Co. v. Ryder Truck Rental,* 583 F.2d 717 (5th Cir.1978); *Bunge Corp. v. Biglane,* 418 F.Supp. 1159 (S.D. Miss.1976); *Maryland Casualty Co. v. Williams,* 377 F.2d 389 (5th Cir.1967); *Mid-Continent Telephone Corp. v. Home Telephone Co.,* 319 F.Supp. 1176 (N.D.Miss.1970); *Spragins v. Louise Plantation,* 391 So.2d 97 (Miss.1980); *Vick v. Cochran,* 316 So.2d 242 (Miss.1975); *see Dunavant Enterprises, Inc. v. Ford,* 294 So.2d 788 (Miss.1974); *Fells v. Bowman,* 274 So.2d 109 (Miss.1973); *Mitchell v. Craft,* 211 So.2d 509 (Miss.1968); *Craig v. Columbus Compress & Warehouse Co.,* 210 So.2d 645 (Miss.1968); *Nationwide Mutual Insurance Co. v. Tillman,* 249 Miss. 141, 161 So.2d 604 (1964).

has the most significant relationship to the event and parties, or which, because of the relationship or contact with the event or parties, has the greatest concern with the specific issues with respect to the liabilities and rights of the parties to the litigation," *Craig v. Columbus Compress and Warehouse Co.*, 210 So.2d 645 (Miss.1968), it is precisely the significance or the lack of significance of these contacts which troubles us. We discern no clear path from the cases cited by the District Court or the parties. In addition to the unknown relative weight to be given by Mississippi to the choice influencing principles of § 6 and

**5.** § 6. Choice-of-Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors, relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

**6.** § 188. Law Governing the absence of Effective Choice by the Parties

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties (see § 187), the contracts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

the relevant comments of the Restatement (Second) of Conflicts,[5] it is also unclear how the Mississippi courts employ the more specific § 188[6] and § 193[7] which appear to bear on the case before us. Also at stake is the weight of the policy embodied in the Mississippi Safety Responsibility Act in helping to assure that motorists involved in accidents with uninsured motorists do not become public charges in Mississippi. Finally, depending almost certainly on the choice of law decision is the validity of the USAA policy's uninsured motorist exclusionary clause.[8]

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203.

**7.** § 193. Contracts of Fire, Surety or Casualty Insurance

The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

**8.** If Nebraska law is held to govern the insurance contract, the exclusionary clause is valid because the Supreme Court of Nebraska has clearly upheld the validity of the insurance contract's exclusionary language denying benefits for uninsured motorist coverage. Accordingly, if Nebraska law applies under the Mississippi "center of gravity" test, Joseph Boardman cannot recover for his injuries. *See Herrick v. Liberty Mutual Fire Insurance Co.*, 202 Neb. 116, 274 N.W.2d 147 (1979). The *Herrick* Court held as follows:

In *Shipley v. American Standard Insurance Co. of Wisconsin*, 183 Neb. 109, 158 N.W.2d 238 (1968), the Plaintiff was operating an uninsured motorcycle when he was injured in a collision with another motorcycle operated by an uninsured motorist. We held that the Plaintiff could not recover under the uninsured motorist provision of a policy which insured a Chevrolet automobile owned by the Plaintiff excluded coverage for "bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the named insured.... We held that an uninsured motorist endorsement should be interpreted in light of the statutory requirements

Fully aware of Mississippi's imprimatur on § 6 we might—by piecing together some of our own deliverances and the District Court opinions dutifully following them—come up with a fair prediction of what Mississippi would hold in this case, but we do not think this a wise course. At issue is a matter of great importance to Mississippi. With facilities for positive determination so readily at hand through certification, it is for Mississippi—not us as a fortuitous momentary spokesman—to make its own policy decisions. This is especially so with respect to the ever growing number of serious automobile accidents on the state's highways involving out-of-state vehicles covered or not covered by insurance policies obtained at earlier times and places by persons in our nomadic society.

Concerned that we uphold our *Erie*[9] duty to apply the substantive law of the forum state in a diversity case, we seek guidance from the one court constitutionally entitled to supply it. Indeed, as this case centers upon the strength of local

Mississippi policies this course is mandated by the principles of federalism. Federal courts should hesitate to "trade judicial robes for the garb of prophet" J. Brown, *Certification—Federalism in Action,* 7 Cum.L.Rev. 455 (1977), when an available certification procedure renders the crystal ball or divining rod unnecessary.

■ Following our usual practice, we are requesting counsel to submit a joint statement of facts and a proposed certificate of questions, *see West v. Caterpillar Tractor Co.,* 504 F.2d 967 (5th Cir.1974).[10]

---

concerning victims of negligent and financial irresponsible motorists, citing *Stephens v. Allied Mutual Insurance Company,* 182 Neb. 562, 156 N.W.2d 133, (1968). An overriding public policy of protecting an owner/operator who inexcusably has no applicable bodily injury liability is not presently discernible. *An insurance contract should be interpreted in accordance with reasonable expectations of the insured at the time of the contract, Stephens v. Allied Mutual, supra.* Plaintiff does not assert that he had bodily injury liability coverage applicable to his motorcycle under the contract. He might expect the uninsured motorist endorsement to cover loss while he was operating his motorcycle, but such expectations are unreasonable.

The statute, of course, relates to automobile liability insurance policies. It requires that uninsured motorist coverage be included in any such policies delivered or issued for delivery in the state unless rejected by the insured. The purpose of the coverage is to protect the insured from uninsured motorists who do not have liability insurance on their vehicle. *It is difficult to find a policy in the statute to protect one uninsured motorist from another un-*

*insured motorist.* This is what the *Shipley* case referred to when it stated: "An overriding public policy of protecting an owner/operator who inexcusably has no applicable bodily liability coverage is not presently discernible." (Emphasis added)

**9.** *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**10.** We point out to the Supreme Court of Mississippi, no doubt unnecessarily, that they need not feel bound in any fashion by the perimeters of the questions certified. We iterate that

[T]he particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues in the matter in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.

*Martinez v. Rodriquez,* 394 F.2d 156, 159 n. 6 (5th Cir.1968).