Mary Rose CURTIS, Appellant,

v.

June Norton CUFF and Carol O. Burbridge, Appellees.

No. 86–515.

District of Columbia Court of Appeals.

Argued Feb. 2, 1987.
Decided Sept. 14, 1987.

Thomas A. Gentile, Chevy Chase, Md., for appellant.

Glenn H. Carlson, Washington, D.C., for appellees.

Before BELSON and ROGERS, Associate Judges, and PAIR, Senior Judge.

ROGERS, Associate Judge:

This is an appeal from a judgment holding appellant Mary Rose Curtis liable under the Motor Vehicle Safety Responsibility Act of the District of Columbia, D.C. Code § 40–408 (1981), for damages caused when her husband negligently drove their car. The trial court found that appellant jointly owned the car with her estranged husband and that the presumption arising from such ownership was sufficient evidence she had consented to his driving the car at the time of the accident. Because appellant offered uncontested evidence to rebut the statutory presumption of consent, she was entitled to judgment as a matter of law. Accordingly, we reverse.

### I.

The underlying facts of this case are not in dispute. On March 29, 1977, appellant's daughter (Ms. Roach) picked appellant's husband (Mr. Curtis) up at the hospital, and drove him to the Municipal Building. While she was inside renewing the car's license plates, Mr. Curtis negligently drove the car into the rear end of a parked car owned by appellee Cuff and in which appellee Burbridge was sitting. Appellant was nowhere near the scene of the accident.

Title to the car driven by Mr. Curtis was registered in the names of "Curtis, Joseph Uthman & Mary Rose." The car had been purchased in 1970 when the Curtises were married and living together. Payments on the car were made in the same manner in which other family bills were paid, namely, appellant gave her retirement check to Mr. Curtis, who then paid the bills out of their combined incomes. Nevertheless, Mr. Curtis considered the car to be his and dictated its use. The car was titled in both names so that it would go directly to appellant in the event of Mr. Curtis' death. From 1970 to 1976, appellant occasionally drove the car on trips to the store.

Fourteen months before the accident appellant left her husband because they "could not get along." She objected,

among other things, to his refusal to allow her to participate in decisions about the use of her retirement money. A formal separation agreement was never prepared; appellant simply left the marital home and all personal belongings, except her clothes, and went to live with her daughter. During the three years of separation appellant did not return to the marital home,[1] where the car remained, and had no contact with Mr. Curtis except to visit him occasionally (approximately four times in three years) in the hospital, where he was suffering from a terminal illness from which he died on April 22, 1979. Since leaving Mr. Curtis in January of 1976, appellant has never driven the car. At the time of the accident, appellant was in good health.

The trial judge, sitting as the trier of fact, found that appellant was an owner of the car, and that because of the presumption arising from such ownership, she had consented to Mr. Curtis' operation of it at the time of the accident.

### II.

Section 408 of the Motor Vehicle Safety Responsibility Act of the District of Columbia (Act), D.C. Code § 40–408 (1981), provides:

> Whenever any motor vehicle, after the passage of this subchapter, shall be operated upon the public highways of the District of Columbia by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed to be the agent of the owner of such motor vehicle, and the proof of the ownership of said motor vehicle shall be prima facie evidence that such person operated said motor vehicle with the consent of the owner.

■ The term "owner" is defined in the Act as "a person who holds the legal title of a vehicle." D.C. Code § 40–402(7). Appellant's name, in addition to Mr. Curtis' name, was on the registration certificate of the car at the time of the accident. How-

---

1. Appellant returned to the marital home in January 1979, several months prior to Mr. Curtis' death, because her daughter's home was too crowded. Mr. Curtis was not residing in the house at that time since he was living with his sister whenever he was not in the hospital.

ever, "holding the registration certificate at the time of an accident is not conclusive as to ownership within the statutory meaning." *Johnson v. Keyes*, 201 A.2d 24, 26 (D.C.1964). Other attributes of ownership include possession, use, and control. *Gasque v. Saidman*, 44 A.2d 537, 538 (D.C. 1945). In *Mason v. Automobile Finance Co.*, 73 U.S.App.D.C. 284, 287, 121 F.2d 32, 35 (1941), the U.S. Court of Appeals for the District of Columbia Circuit described a car owner as one who had the power and the legal right to permit its use by another:

> [T]he purpose of the statute was to place the liability upon the person in a position immediately to allow or prevent the use of the vehicle and to do so by giving a lawful and effective consent or prohibition to its operation by others. The object was to control the giving of consent to irresponsible drivers by the one having that power rather than to impose liability upon one having a naked legal title with no immediate right of control.

■ The trial judge's finding that appellant was an owner of the car within the meaning of the Act is supported by substantial evidence of record and is not clearly erroneous. *See Johnson v. Keyes, supra*, 201 A.2d at 26. She contributed funds to the car's purchase, drove it and otherwise had immediate control over it while she lived with Mr. Curtis. After their separation, although she effectively relinquished control over the car and all other marital property, she was under no legal obligation to do so, and could have reasserted control over the car at any time. The car remained with Mr. Curtis at the marital home during their separation, but during much of that time Mr. Curtis was either in the hospital or staying with his sister. Although the record indicates that Mr. Curtis exercised dominating control over the use of the car, there is no evidence that he would have tried to dissuade appellant from taking possession of the car, and as a co-owner she had the legal right to do

so. Moreover, as the trial judge found, because of the comparative health of the Curtises at the time of the accident, appellant was in a better position than Mr. Curtis to exercise control over the car.

■ The question, therefore, is whether appellant successfully has overcome the presumption that, at the time of the accident, she impliedly consented to Mr. Curtis' operation of the car. *Joyner v. Holland*, 212 A.2d 541, 542 (D.C.1965) ("in a co-ownership of an automobile there is an implied mutual consent to the use and operation thereof by either owner"); *Lancaster v. Canuel*, 193 A.2d 555, 558 (D.C.1963) ("The effect of [§ 40–408] is to impose upon the owner the affirmative duty of proving that his car was not being driven with his consent."). To determine whether the presumption of consent has been overcome,[2] it has long been held that:

> (1) Once the defendant's ownership has been established, the statute creates a presumption of agency which places the burden of proof as to the question of consent upon the defendant-owner. (2) The defendant-owner overcomes the statutory presumption when he [or she] offers uncontradicted proof that the automobile was not at the time being used with his [or her] permission. When the presumption is thus overcome, the defendant-owner is entitled to a favorable finding as a matter of law. (3) Where the defendant-owner offers some credible evidence to overcome the presumption, but evidence not strong enough to entitle him [or her] to judgment as a matter of law, the question of liability resolves itself into a question of fact.

*Simon v. Dew*, 91 A.2d 214, 215–16 (D.C. 1952). *See Jones v. Halun*, 111 U.S.App.D. C. 340, 341, 296 F.2d 597, 598 (1961), *cert. denied*, 370 U.S. 904, 82 S.Ct. 1249, 8 L.Ed. 2d 401 (1962).

■ Appellant testified that she and Mr. Curtis were not communicating at the time

---

2. When the issue is one of fact, this court will not overturn the trial judge's findings unless they are clearly erroneous or unsupported by evidence in the record. We owe no such deference on a question of law. D.C.Code § 17–305;

*Auxier v. Kraisel*, 466 A.2d 416 (D.C.1983). On the record before us it is clear appellant met her burden to rebut the presumption of implied consent.

of the accident, but that if they had been she would not have let him drive. Specifically, at her deposition appellant was asked: "If [Mr. Curtis] had asked you if you [he?] could drive the car in March '77 considering his condition, would you let him?" She responded: "No, I would say no way, I wouldn't even want to be in the car with him." She testified that "he was in no condition to drive," explaining, "[b]ecause he was sick and lost so much weight and everything." It is clear that at the time of the accident appellant thought Mr. Curtis was too ill to drive, being in a weakened condition, and had not consented to his doing so. Moreover, appellant testified that on the day of the accident, she was aware her daughter was going to drive Mr. Curtis home from the hospital in the Curtis' car, which was larger than Ms. Roach's car. Thus it is clear that everyone involved intended Mr. Curtis, who was terminally ill and very weak, to remain a passenger in the car. And he was a passenger only, until he took matters into his own hands while his daughter was elsewhere. Mr. Curtis' inability to control the car when he took the wheel corroborates appellant's opinion that he was unable to drive. Since appellant's testimony was uncontroverted, it was sufficient to overcome the statutory presumption of consent arising from ownership.[3] Therefore, she was entitled to judgment as a matter of law.

■ Appellee's contention that there was sufficient evidence to show appellant's consent because both appellant and Mr. Curtis used the car during the time they lived together misses the point; the relevant time is the time of the accident, and not fourteen months earlier. *Stumpner v. Harrison,* 136 A.2d 870, 871 (D.C.1957)

(relevant time for determining consent is "at the time of the accident"); *see also Joyner, supra,* 212 A.2d at 542; *Lancaster, supra,* 193 A.2d at 558; *Simon, supra,* 91 A.2d at 216; *Rosenberg v. Murray,* 73 U.S.App.D.C. 67, 68, 116 F.2d 552, 553 (1940).

The trial judge only made factual findings on ownership and on control; these findings are not relevant to consent. *Mason, supra,* 73 U.S.App.D.C. at 287, 121 F.2d at 35. With regard to consent, the judge stated only "I believe the fact that Ms. Curtis owned the automobile together with Mr. Curtis, that that was sufficient consent from Ms. Curtis to Mr. Curtis to operate this motor vehicle, so far as the requirement of the statute is [sic] concerned, at least in so far as the two of them are concerned." The conclusory statement that appellant was liable because she was an owner of the car "and she had consented and permitted his use of the car at the time in question under the circumstance as they existed at that time ..." appears to be either a misstatement of law or a factual finding which is clearly erroneous. "Making ownership 'prima facie evidence' of consent does not dispense with the requirement of consent. It affects only the way consent may be proved." *Jones v. Halun, supra,* 111 U.S.App.D.C. at 341, 296 F.2d at 598. Appellant's testimony that she and Mr. Curtis had not lived together for fourteen months before the accident, that she had never driven the car during their separation, that she had not consented to his use of the car because he was too ill to drive, and that arrangements had been made for someone else to drive him while he was in the car, was undisputed by any other evidence and, therefore, successfully rebutted the statutory presumption of con-

---

**3.** The dissent relies on *Williams v. Baines,* 257 A.2d 762 (D.C.1969) for the proposition that appellant's statutorily implied consent conflicted with her testimony that she did not consent to Mr. Curtis' use of the car, and therefore she was not entitled to judgment as a matter of law. But proving ownership is not conclusive of the consent issue and the statutory presumption is not irrebuttable. *Jones v. Halun, supra,* 111

U.S.App.D.C. at 341, 296 F.2d at 598. *Williams* is also distinguishable because the defendant-owner left the car keys and a note describing an errand (repairing an amplifier) which would be likely to require the use of a car. Here, by contrast, appellant knew that while Mr. Curtis would be in the car, her daughter would be driving. In addition, the credibility of the de-

sent.[4]

■ Appellant was not, as appellees argue, required to take affirmative steps to keep Mr. Curtis from driving the car. While it is true that expressly withdrawing consent effectively rebuts the presumption, *Neary v. Hertz*, 231 F.Supp. 480, 482 (D.D. C.1964), it is not true that the co-owner must say "I forbid you to drive the car" in order to prevail. In *Lancaster, supra*, the defendant-owner was held not liable because he never gave a delivery boy permission to drive the car after hours, although he had consented to use of the car for business purposes, and had not expressly forbidden the personal use of the car. 193 A.2d at 558. The defendant's uncontradicted testimony that he did not consent to the after-hours operation was enough to rebut the statutory presumption. *Id.*

Even if appellant had been required to affirmatively withdraw her consent, surely it would have been unnecessary to do so under these circumstances. Appellant had no reason to believe that Mr. Curtis would be driving their car at the time of the accident, much less during most of the time of their separation; the car remained at the marital home while he spent most of the time either in the hospital or at his sister's house, and he was in too weakened a condition to drive by the time of the accident. On the day of the accident, Ms. Roach,

rather than Mr. Curtis, was driving. Under these circumstances it would be irrational for the law to require that appellant affirmatively forbid Mr. Curtis from taking the wheel.

Accordingly, the judgment is reversed.[5]

BELSON, Associate Judge, dissenting:

I dissent from the majority opinion's holding that appellant, because she offered uncontested evidence to rebut the statutory presumption of consent, was entitled to judgment as a matter of law. As the trial judge perceptively observed, the very fact that appellant held the status of joint owner of the car with her husband implies her consent to her co-owner husband's operation of the car. Add to that fact the unrebutted evidence that over a long period she routinely assented to his operation of the car, and the absence of any indication that she ever took steps to withdraw her consent or to end their joint ownership, and it becomes clear that there was ample basis for the trial court's finding of consent.

Under the Motor Vehicle Safety Responsibility Act, D.C.Code §§ 40–401 *et seq.* (1981), there is a statutory presumption that the driver of a vehicle operates the vehicle with the owner's consent. D.C. Code § 40–408 (1981). While this presumption can be rebutted,[1] to do so requires

---

fendant-owner in *Williams* was impeached, while appellant's was not.

4. Appellees' efforts to distinguish the cases relied upon by appellant are to no avail. Appellees note appellant's name is on the registration certificate, she contributed money towards the car's purchase, and drove it while she lived with Mr. Curtis. All of these facts are relevant to the issue of ownership, but not to the issue of consent. Although ownership is prima facie evidence of consent, it does not dispense with the requirement of consent; it affects only the way consent must be proved. *Jones v. Halun, supra*, 111 U.S.App.D.C. at 341, 296 F.2d at 598. Since appellant rebutted the presumption of consent, and appellees did not put forth any evidence of consent, appellant cannot be held liable under § 40–408.

5. Appellees are not precluded from other avenues of recovery. They could have recovered from Mr. Curtis, who did not die until two years after the collision. Since he was an owner, and was actually driving at the time of the collision,

he obviously consented to that use. At oral argument appellees asserted that they had originally sued Mr. Curtis, but failed to effect proper service.

1. The presumption of consent arises from the strong public policy of assuring that a person who enjoys the benefits of owning an automobile must bear the burden of compensating persons who are injured by its use. Presumptions such as this that are "buttressed by weighty social policies" place the burden of persuasion on the party controverting the presumed fact. *Green v. D.C. Dep't of Employment Servs.*, 499 A.2d 870, 874–75 & n. 3 (D.C.1985); *see Brown v. Brown*, 524 A.2d 1184, 1188 & n. 3 (D.C.1987). This is in contrast to presumptions that operate under the "bursting bubble" theory, under which "the presumption vanishes" as soon as evidence is offered against the fact presumed. *Brown, supra*, 524 A.2d at 1188; *Green, supra*, 499 A.2d at 874.

"uncontradicted proof sufficient to destroy the inference supporting plaintiff, and which raises no doubts against the defendant." *Miller v. Imperial Ins. Inc.,* 189 A.2d 359, 360 (D.C.1963) (footnotes omitted); *accord, Alsbrooks v. Washington Deliveries, Inc.,* 281 A.2d 220, 221 (D.C.1971); *Farrall v. Ellis,* 157 A.2d 127, 128 (D.C. 1960). Where there is such uncontradicted proof, the owner is entitled to judgment as a matter of law. *Love v. Gaskins,* 153 A.2d 660, 662 (D.C.1959). But "[w]here the evidence is not so convincing or positive— *i.e.,* where it has revealed inconsistency or where contradictions are present—the trier of fact must assume its usual role of resolving the conflict presented." *Hancock v. Morris,* 173 A.2d 922, 923 (D.C.1961); *accord, Alsbrooks, supra,* 281 A.2d at 221; *Farrall, supra,* 157 A.2d at 128; *Love, supra,* 153 A.2d at 662; *see also Miller, supra,* 189 A.2d at 360 (trial court properly decided consent as question of fact, rather than of law, when evidence rebutting defense, although not expressly contradicted, was "not convincing" and thus was insufficient to overcome presumption of consent).

It is undisputed that appellant and her now-deceased husband were co-owners of the vehicle in question. The majority acknowledges that such joint ownership creates an *implied* mutual consent by each co-owner to the use and operation of the vehicle by the other co-owner. *Supra* at 1074; *see Joyner v. Holland,* 212 A.2d 541, 542 (D.C.1965). This implied consent does not arise merely from the presumption of agency created by D.C.Code § 40–408, but rather is inherent in the mutual entitlement to the benefits of ownership enjoyed by co-owners.

The implied consent created by appellant's co-ownership with her husband presented an inconsistency with her denial of consent. *See Williams v. Baines,* 257 A.2d 762 (D.C.1969). In *Williams,* the appellant car owner urged that she had rebutted the statutory presumption by her uncontradicted testimony denying consent. *Id.* at 763. This court disagreed. We held

that evidence of implied consent, along with the questionable credibility of the appellant's testimony, raised a conflict that prevented the denial of consent from being "uncontradicted," and thus precluded a directed verdict for the defendant. *Id.*

As in *Williams,* appellant's implied consent to use by the co-owner created a conflict with her testimony that she did not consent to his use. Furthermore, appellant's testimony itself was not "so convincing or positive" to show a lack of consent: appellant did not actually testify that she did not consent to her husband's driving the car, but rather that she would not have consented if he had asked her if he could drive it.[2]

Here the fact of appellant's co-ownership conflicted with her assertion that she did not consent to her husband's use of the car. The long history of his use of the jointly owned car with her permission, never withdrawn, also conflicts with appellant's self-serving testimony. Accordingly, it was proper for the trial judge to resolve the question as a matter of fact rather than of law. In resolving that question, his determination that appellant's testimony did not overcome the presumption of consent was not clearly erroneous.

Significant circumstantial evidence supports the trial judge's finding that appellant had implicitly consented to her husband's use of the car. There is no indication in the record that appellant ever withdrew the ongoing consent which she had given at the inception of their ownership, and which was confirmed by years of usage. Appellant and her husband had been married for almost fifty years, and had purchased the automobile from their pooled finances seven years before the incident that gave rise to this case. Although both appellant and her husband drove the car during the first five years of ownership, her husband was its primary driver. The record unmistakably establishes that con-

2. Although appellant did not testify at trial, her deposition was presented to the trial court, and is part of the record on appeal.

tinuing mutual consent to drive existed for several years.

While appellant did testify that, because of her husband's illness, she would not have agreed to his driving at the time of the accident, there is no evidence in the record that she had ever communicated to him any withdrawal of her longstanding consent. A consent granted by the fact of co-ownership and confirmed by many years of usage should be presumed to continue unless it is withdrawn. *Cf. Amicar Rentals, Inc. v. Moore,* 294 A.2d 361, 362 (D.C. 1972) (filing of complaint for not returning rental car revoked prior consent to drive car); *Neary v. Hertz Corp.,* 231 F.Supp. 480, 482 (D.D.C.1964) (notification to lessee not to let employee drive car negated previous consent).

This is not a case where the person sued held naked legal title to an automobile for the convenience of the driver. *See Spindle v. Reid,* 277 A.2d 117, 118–19 (D.C.1971); *Bush v. Johnson,* 215 A.2d 850, 852 (D.C. 1966); *Johnson v. Keyes,* 201 A.2d 24, 26 (D.C.1964). Appellant was, as the majority concedes, an owner in the full sense of the word. Nor is this a case where a non-owner driver exceeded the scope of his limited authority to drive, and thus drove without the owner's consent. *See Lancaster v. Canuel,* 193 A.2d 555, 558 (D.C.1963). Instead, this is a suit against a full-fledged owner and co-purchaser of an automobile who used it and benefited from its use for a number of years. When she began to live separately from her co-owner spouse, she did not surrender ownership or her right to control the automobile. Nor did she ever revoke her longstanding consent to his driving the automobile. Under these circumstances, I think the policy served by the Motor Vehicle Safety Responsibility Act calls for the car's owner, rather than the person injured by the automobile, to sustain the resulting loss. At the least, the set of circumstances presented the trial court with a contested issue of fact regarding consent, and the court's resolution of that issue was not clearly erroneous.