EDITH H. JONES, Circuit Judge:
Appellant U.E. Texas One-Barrington, Ltd. (“Texas One”) appeals the district court’s grant of summary judgment in favor of appellees General Star Indemnity Company (“General Star”) and Fireman’s Fund Insurance Company (“Fireman’s Fund”) on its claims for insurance coverage relating to damage to the Oak Meadow Apartment complex caused by water leaking from the plumbing system. On appeal, Texas One argues that the district court erred in holding that (1) General Star is not liable for access costs because the damage caused by long-term water leaks are not covered water damage under the General Star policy and (2) the plumbing leaks under each building are, as a matter of law, “separate occurren¿es” for purposes of determining deductibles under the Fireman’s Fund excess coverage policy. Finding no reversible error, we affirm.
*276 BACKGROUND
Texas One, at all times relevant to this suit, owned the Oak Meadow Apartments complex (“Oak Meadow”) in San Antonio, Texas. Oak Meadow, built in 1974, consists of thirty residential buildings, three office buildings, and other facilities. Each residential building contains at least four separate apartments. General Star insured Oak Meadow pursuant to a commercial property policy effective from October 21, 1995 to October 21, 1996. Fireman’s Fund provided excess coverage pursuant to a commercial excess property policy effective from October 21, 1995 to October 21, 1996. Around October 1, 1996, Texas One discovered that several of the buildings had suffered foundation movement and above ground damage. The foundation movement and damage resulted from moisture changes in the soil beneath the foundations. Although the cause of these moisture changes remains disputed, tests revealed that nineteen buildings in the complex had experienced plumbing leaks. Texas One admits that it does not know when any of the leaks began. The parties agree that the leaks existed continuously and repeatedly for more than 14 days prior to discovery of the damage. The parties also stipulated that the leaks under any particular building foundation at the property only affected the foundation of that particular building and did not contribute to the movement of any other building foundation at the property nor did they cause any other plumbing leaks.
In November 1999, Texas One filed suit in Texas state court against General Star and Fireman’s Fund for breach of contract arising out of the insurers’ refusal to pay on Texas One’s claims. General Star and Fireman’s Fund removed the case to federal court and subsequently moved for summary judgment.
STANDARD OF REVIEW
We review a district court’s grant of summary judgment de novo. Hodges v. Delta Airlines, Inc., 44 F.3d 334, 335 (5th Cir.1995) (en banc). Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Hunt v. Cromartie, 526 U.S. 541, 552, 119 S.Ct. 1545, 1551-52, 143 L.Ed.2d 731 (1999); see also Fed. R.Civ.P. 56(c). If the moving party meets its burden, the non-movant must designate specific facts showing there is a genuine issue for trial. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).
DISCUSSION

General Star

Texas One argues that General Star was obliged to pay for costs incurred by Texas One in accessing the plumbing system for repair. Texas One raises two arguments in support of its claim: (1) that the language of the General Star policy requires payment of Texas One’s access costs even though payment for the damage caused by the leaks is barred under an exclusionary clause and (2) that General Star admitted that it was obliged to pay for the access costs because it made a partial payment on Texas One’s access cost claims. Texas One’s arguments are without merit. This court recently addressed Texas One’s arguments in a case interpreting policy language identical to the language at issue in this case and held that access costs were not recoverable. See Gen. Accident Ins. Co. v. Unity/Waterford-Fair Oaks, Ltd., 288 F.3d 651, 656 (5th Cir.2002).

*277
Fireman’s Fund

Texas One also contends that the district court erred in determining that the damage to each of the nineteen buildings is a separate occurrence under the Fireman’s Fund excess coverage policy for which Texas One must pay nineteen deductibles. Texas One argues that although each building was damaged by different leaks, there is still only one occurrence for purposes of the Fireman’s Fund policy. Texas One’s argument rests upon its contention that all of the leaks can be traced back to defects in the materials and installation of the underground plumbing system. The Fireman’s Fund policy, in pertinent part, provides:
This Company shall be liable in re- . spect of each and every loss occurrence, irrespective of the number and kinds of risks involved, for 100% of the ultimate net loss excess over and above $1,000,000 ultimate net loss to the Insured in each and every loss occurrence.
The term loss occurrence means the total loss by perils insured against arising out of a single event. When the term applies to loss or losses from the perils of tornado, cyclone, hurricane, windstorm, hail, flood, earthquake, volcanic eruption, riots, riots attending a strike, civil commotion, and vandalism and malicious mischief, a single event means all losses whenever occurring which directly results from such perils during a continuous period of 72 hours.
The policy provides for a maximum payout of $13,267,000 per occurrence.
The damage to the nineteen buildings resulted in more than $1,000,000 net loss to Texas One. However, the damage to any one building did not exceed $1,000,000. Thus, we are called upon to interpret the term “occurrence” and determine whether the damage to the nineteen buildings constitutes one occurrence (resulting in one deductible) or nineteen occurrences (resulting in nineteen deductibles).
Neither party contends that “occurrence” is ambiguous in this contract nor that our determination of the number of occurrences hinges on resolution of a factual dispute. Thus, the interpretation of “occurrence” as used in the contract is a question of law. Ran-Nan Inc. v. General Accident Ins. Co., 252 F.3d 738, 739 (5th Cir.2001) (per curiam). Under Texas law, “the proper focus in interpreting ‘occurrence’ is on the events that cause the injuries and give rise to the insured’s liability, rather than on the number of injurious effects.”[2] Id. at 740 (quoting H.E. Butt Grocery Co. v. Nat’l Union Fire Ins. Co., 150 F.3d 526, 530 (5th Cir.1998)).
In understanding how to apply this test, we are guided by a prior decision applying *278 Texas law to a policy containing language similar to that found in the Fireman’s Fund policy. Goose Creek Consol. I.S.D. v. Cont’l Cas. Co., 658 S.W.2d 338 (Tex. App.—Houston [1st Dist.] 1983, no writ) dealt with two fires occurring at two different schools at different locations and at different times. The insurance policy in Goose Creek stated that a “loss occurrence” referred to “the total loss by perils insured against arising out of a single event.” Id. at 340. This is the same definition found in the Fireman’s Fund policy. Hoping to pay only one deductible, the school district sought to prove that the damages arose from the work of a single arsonist on a single morning. The court held that regardless of the presence or absence of a single arsonist, there were two “occurrences” as a matter of law due to “the fact that two fires distinguishable in space and time occurred and that one did not cause the other.” Id. at 341. Similarly, Texas One’s property experienced multiple leaks distinguishable in space and time.[3]
Goose Creek instructs us not to look to any overarching cause, but rather to focus on the event that gave rise to Fireman’s Fund’s liability under the policy. For example, in Goose Creek the court did not look to the existence of a single arsonist, but rather to the number of fires that caused the buildings to burn. Thus, in determining the number of “occurrences” under the Fireman’s Fund policy, we should not focus on the alleged overarching cause, but rather on the specific event that caused the loss. In this case the losses arose when the pipes broke, not when they were installed. The parties have stipulated that a different leak was responsible for the damage to each building, and as such we agree with the district court that each leak constitutes a separate occurrence as a matter of law.
To point to the installation of the pipes as the single event which gave rise to the damage to the nineteen buildings proves too much. Of course it is true that had the plumbing system never been installed the leaks would not have occurred. In this sense, it is true that the leaks which independently damaged the nineteen buildings arose from the same event. However, to look this far back would render any damage to the complex occurring at any time related to the plumbing as arising from the same event.
Since no one building suffered a $1,000,000 net loss, Texas One has not met the $1,000,000 per occurrence threshold to recover under the Fireman’s Fund policy. Therefore, the district court was correct in granting summary judgment in favor of Fireman’s Fund.
CONCLUSION
Upon review of the record, we find that summary judgment in favor of General Star was proper in light of this court’s decision in Unity. Furthermore, summary judgment in favor of Fireman’s Fund was proper because the net loss attributable to each occurrence was less than the deductible under the policy. Finding no reversible error, we AFFIRM.
AFFIRMED.

. The dissent goes to substantial effort to distinguish cases defining “occurrence” in general liability policies from "occurrence” in property loss policies. Even if the dissent's policy arguments are correct, however, this court has already rejected any such distinction. In Ran-Nan Inc., we stated that
General Accident contends that decisions utilizing "cause” analysis such as H.E. Butt and Maurice Pincoffs are distinguishable as construing general liability insurance policies instead of employee dishonesty insurance policies. Not only does the company neglect to cite any authority supporting this contention, but it also fails to explain why, in determining the number of "occurrences”, employee dishonesty policies are different than general liability policies. It is true that no Texas case specifically applies “cause” analysis to employee dishonesty policies, but this widely accepted method for calculating the number of "occurrences” is consistent with the general principles of Texas law.
252 F.3d at 740. For present purposes, employee dishonesty policies are indistinguishable from property loss policies.

. And as noted previously, the parties have stipulated that the damage to each building was caused by leaks under that particular building and that each leak had no effect on any other building.