United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 28, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 03-10404
_____

PRISCILLA S. CATES, Individually and as Guardian of the Person and
Estate of Bobby Ray Cates, an Incapacitated Person,

                              Plaintiff - Appellant-Cross-Appellee,

                         versus

MATTHEW SCOTT CREAMER,

                              Defendant - Appellee-Cross-Appellant

LAMAE CREAMER; HERTZ CORPORATION,

                              Defendants - Appellees.
_____

Appeal from the United States District Court
for the Northern District of Texas, Wichita Falls
USDC No. 7:00-CV-121
_____

Before JOLLY, JONES, and DEMOSS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

     The lease for the Hertz rental car was executed in Florida.
The wreck and Bobby Cates's injuries occurred in Texas.  The
defendant driver, Matthew Scott Creamer, momentarily went to sleep
while driving.  Mr. Cates's car had stalled on the side of the
highway when Creamer hit it, severely injuring Bobby Cates.  The
first jury found no negligence and returned its verdict for the
defendant, Creamer.  The district court granted a new trial.  The
second jury found Creamer 70% at fault for the accident and awarded
damages to the plaintiff.  The court, however, applied Texas law

and exonerated Hertz from liability. Cates hopes to collect the award from Hertz based on the Florida law relating to vicarious liability. Creamer hopes to reinstate the first jury's verdict, which means we have to decide whether Creamer's falling asleep at the wheel was fault-free. If we uphold the grant of a new trial and the verdict of the second jury, then we must decide whether Texas or Florida law applies to determine Hertz's vicarious liability. If Texas law applies, Hertz prevails in this appeal. If Florida law applies, Cates prevails.

Ultimately, we uphold the district court's grant of a new trial to Cates and, consequently, the verdict of the second trial. We further hold that Florida law applies to the vicarious liability issue and remand the case to the district court for further proceedings applying Florida law.

I

A

On June 29, 1998, Florida residents Matthew and Lamae Creamer rented a mini-van from Hertz Corporation ("Hertz") in Florida.[1] They planned to travel from Panama City, Florida to Spearman, Texas for a family reunion. They apparently told the Hertz agent that they planned to make the 24-hour trip without stopping for the night by alternating drivers. The Creamers signed a rental agreement that stated: "This agreement is solely for the purpose of

---

[1] Hertz is incorporated in Delaware and its principal place of business is New Jersey.

creating a bailment that allows You to use the car as permitted by this agreement." Under the agreement, the Creamers could drive the minivan anywhere in the United States and Canada, but they were obligated to return it to Florida. The agreement referenced Florida's financial responsibility and "no fault" personal injury laws but did not contain a choice-of-laws provision.

The Creamers began driving at around noon on June 29. Matthew Creamer ("Creamer") drove approximately eight hours from Panama City to New Orleans, Louisiana, at which time Mrs. Creamer began to drive. She drove through the night into Texas while Creamer slept in the car. He awoke near daybreak to discover that the car was pulled over to the side of the road and that Mrs. Creamer was asleep. He then resumed driving and set the cruise control to 70 miles per hour, the highway's speed limit. Creamer fell asleep at the wheel and awoke as he hit Bobby Ray Cates's ("Mr. Cates") parked car. Tragically, Mr. Cates was standing in front of the front passenger door and the impact of the collision projected him several feet into the roadway.

As a result of the severe head injuries he sustained, Mr. Cates is unable to work and is almost completely incapacitated. Mr. Cates's medical expenses exceed $200,000. He resides at a long-term care facility. Priscilla Cates ("Cates") is his legal guardian.

B

3

Cates filed a diversity suit in the Northern District of Texas against Creamer for negligent operation of a motor vehicle under Texas law, seeking compensation for medical expenses and lost wages. She also sued Hertz under Florida's "dangerous instrumentality doctrine," which imposes vicarious liability on the owner/lessor of a vehicle who entrusts it to a lessee who operates it negligently, causing damages. Hertz moved for summary judgment, contending that Texas law, not Florida law, controls the vicarious liability issue. Texas does not recognize the dangerous instrumentality doctrine; instead, it has adopted the doctrine of negligent entrustment, which provides that for Cates to make Hertz vicariously liable she must show: "(1) entrustment of a vehicle by the owner; (2) to an unlicensed, incompetent, or reckless driver; (3) that the owner knew or should have known to be unlicensed, (4) that the driver was negligent on the occasion in question and (5) that the driver's negligence proximately caused the accident." Schneider v. Esperanza Transmission Co., 744 S.W.2d 595, 596 (Tex. 1987). The district court granted Hertz's motion and dismissed Cates's suit against Hertz after finding that Cates could not make a prima facie case of negligent entrustment against Hertz under Texas law. It subsequently denied Cates's motion to reconsider its summary judgment order.

The first trial, with Creamer as the sole defendant, began on July 9, 2002. Creamer denied that he was liable and argued that

4

Cates was contributorily negligent. The jury returned a verdict in which it found that Creamer was not negligent. The district court, however, granted Cates's motion for new trial. The second jury returned a verdict in favor of Cates, finding that Creamer was 70% negligent and Mr. Cates was 30% negligent. The jury assessed actual damages of $3,080,000.00. The district court entered judgment of $2,156,000 plus prejudgment interest of $851,782.47.

This appeal and cross appeal present two issues. First, Cates appeals the summary judgment dismissing Hertz, contending that Florida law, not Texas law, controls the issue of vicarious liability. Creamer cross-appeals the grant of Cates's motion for new trial. He urges that the district court abused its discretion in granting the motion for new trial because the first verdict was not against the great weight of the evidence. Creamer requests that we reinstate the first verdict. We will address this issue first.

II

We review a district court's grant of a motion for new trial for abuse of discretion. Gov't Fin. Servs. One Ltd. Partnership v. Peyton Place, Inc., 62 F.3d 767, 774 (5th Cir. 1995). Where a motion for a new trial is granted, we scrutinize that decision more closely. Scott v. Monsanto Co., 868 F.2d 786, 789 (5th Cir. 1989) (noting that when a motion for new trial is granted "the broad discretion allowed to the trial court is tempered by the deference

5

due to a jury[]"). We review a grant of summary judgment <u>de novo</u>, applying the same standard as the district court. <u>U.E. Texas One-Barrington, Ltd. v. Gen. Star Indem. Co.</u>, 332 F.3d 274, 276 (5th Cir. 2003). Finally, we review a district court's conflict of laws determination <u>de novo</u>. <u>Spence v. Glock</u>, 227 F.3d 308, 311 (5th Cir. 2000).

## III

### A

A district court can grant a motion for new trial if the first trial was unfair or if the jury verdict was against the great weight of the evidence. <u>Monsanto</u>, 868 F.2d at 789. Several factors guide us in the review of a district court's order granting a new trial: We consider the simplicity of the issues, "pernicious occurrences" at trial, and the extent to which the evidence is in dispute. <u>Id</u>. (quoting <u>Smith v. Transworld Drilling Co.</u>, 773 F.2d 610, 613 (5th Cir. 1985). If we determine that one or more of the above factors supports the district judge, we generally affirm the grant of a new trial. <u>Shows v. Jamison Bedding, Inc.</u>, 641 F.2d 927, 931 (5th Cir. 1982). However, even if we find that all three of these factors weigh against the grant of a new trial, we may still apply an overriding consideration and affirm the district court's order of a new trial by determining "independently[] that the jury verdict was against the great weight of the evidence." <u>Id</u>.

6

We will assume that each of the three factors tilts against the grant of a new trial here. The question thus becomes whether the fourth consideration, standing alone, supports the grant of a new trial. See Shows, 671 F.2d at 931. We have frequently affirmed district court grants of motions for new trials on evidentiary grounds alone. See, e.g., Shows; United States v. Horton, 622 F.2d 144 (5th Cir. 1980); Bazile v. Bisso Marine Co., Inc., 606 F.2d 101 (5th Cir. 1979); Massey v. Gulf Port Oil Corp., 508 F.2d 92 (5th Cir. 1975); Weyerhauser v. Bucon Construction Co., 430 F.2d 420 (5th Cir. 1970).

Creamer argues that he presented sufficient evidence for the jury to find in his favor. He maintains that falling asleep at the wheel creates only a rebuttable inference of negligence. Creamer further argues that he successfully rebutted that inference by submitting evidence that Mr. Cates was drunk at the time of the accident, that Mr. Cates did not turn on his hazard lights after pulling over, that Mr. Cates's car may not have been entirely off the road,[2] that Creamer had no reason to anticipate that he would fall asleep at the wheel because he was well-rested when he began driving that morning, and that Creamer had nodded off only momentarily.

---

[2] Creamer argues that the jury could have concluded that Cates's car was in the road from Creamer's testimony that his car had just hit the roadway's rumble strips when he collided with Cates's parked car.

7

Cates counters that Creamer did not present any evidence that justified or excused his falling asleep at the wheel and thus did not rebut the inference of negligence. She further argues that any evidence tending to show Mr. Cates's negligence goes only to comparative negligence and does not relieve Creamer of responsibility. She also contends that Creamer's contention that Mr. Cates's car was in the roadway is meritless because it is controverted by the police officer's report, which found that Mr. Cates's car was legally parked on the shoulder. Finally, Cates argues that the danger of a crash is foreseeable when the driver falls asleep while traveling 70 miles per hour. These facts, Cates argues, foreclose any doubt as to the foreseeability of the accident.

B

We agree with Cates that the district court did not abuse its discretion in concluding that the first jury verdict was against the great weight of the evidence. This conclusion is clearly supportable when evaluated under Texas law. Texas case law acknowledges that "[i]t is hardly possible to yield to sleep without having premonitory symptoms of its approach[.]" McMillan v. Sims, 112 S.W.2d 793, 797 (Tex. Civ. App. 1937, writ dism. agr.). When a driver ignores these warnings and falls asleep while driving, as Creamer concedes, an inference of negligence arises. Id. (citing Potz v. Williams, 113 Conn. 278, 155 A. 211, 212 (Conn. 1931)). Creamer cannot point to any evidence that he did not

8

experience these premonitory symptoms of sleep. Creamer's evidence that he was well-rested before driving shows only that he exercised due care before he became sleepy; it shows neither that he had no warning signs of sleepiness nor that he was excused or justified in ignoring such signs. Moreover, the evidence relating to Cates's fault does not go to exonerate Creamer -- it goes to establish comparative fault for the injury. Because we find that Creamer did not rebut the inference of negligence arising from his nodding off at the wheel, we affirm the district court's holding that the first jury verdict -- relieving Creamer of all liability -- was against the great weight of the evidence.

We now turn to consider whether the district court erred in applying Texas law instead of Florida law, which had the effect of relieving Hertz of all liability.[3]

IV

A

We review <u>de</u> <u>novo</u> a district court's choice of law determination. <u>In re Air Disaster at Ramstein Air Base, Germany</u>, 81 F.3d 570, 576 (5th Cir. 1996).

Cates argues that the district court erred in its conflict of laws analysis, specifically, by failing to follow the narrow issue-by-issue approach set forth in the Second Restatement on Conflicts of Laws, which Texas has adopted. <u>See</u> <u>Duncan v. Cessna Aircraft</u>

---

[3] Cates does not challenge the district court's analysis of Texas's negligent entrustment law.

9

Co., 665 S.W.2d 414, 421 (Tex. 1984). She contends that the court should have focused on the facts and circumstances surrounding the issue of vicarious liability -- not on the issue of general negligence. In support of her argument she cites § 174 of the Second Restatement on Conflict of Laws, which provides that

> [t]he local law of the state which has the most significant relationship to the occurrence and the parties with respect to the issue of vicarious liability should be applied in determining whether one person is liable for the tort of another person.[4]

Hertz argues that § 174 should not be applied to this case because it contains a specifically relevant limitation: In determining which state's law should apply to an issue of vicarious liability, "the forum will be influenced by rules of vicarious liability prevailing in other states." Restatement (Second) Conflict of Laws § 174 cmt. b (1971). Hertz asserts that state laws have overwhelmingly rejected vicarious liability arising from the dangerous instrumentality doctrine. Thus, Hertz concludes, the prevailing view of the majority of the states should persuade the forum court not to apply vicarious liability under Florida law.

B

(1)

---

[4] Further support for this proposition is found in the Restatement's statement that "[e]ach issue is to receive separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states." Restatement (Second) Conflict of Laws § 145 cmt. d (1971).

10

Hertz's argument that we should disregard the Florida rule on vicarious liability because only three states have adopted the dangerous instrumentality doctrine ignores the broader and more relevant consideration. Although § 174 requires us to "be influenced by the rules of vicarious liability prevailing in other states[,]" it also directs that "a relationship which forms the basis for the imposition of vicarious liability in a substantial number of states" will likely be adequate for such an imposition, "even if it would not result in such liability under the forum's local law." Restatement (Second) Conflict of Laws § 174 cmt. b. The relevant inquiry, thus, is not how many states have adopted the precise rule that prevails in Florida, but how many states recognize vicarious liability in comparable relationships between bailor and bailee. We note that at least nineteen states, including the District of Columbia, arguably impose vicarious liability on automobile lessors in some circumstances, often under the principles of agency.[5] At least eight of those jurisdictions

_____

[5] See 59 Bus. Law. 1161; N.Y. Veh. & Traf. Law § 388 (McKinney 1996 & Supp. 2004); Shuch v. Means, 226 N.W.2d 285, 287 (Minn. 1975); Mich. Comp. Laws § 257.401; Burton v. Gardner Motors, Inc., 172 Cal. Rptr. 647, 649 (Ct. App. 1981); Conn. Gen. Stat. § 14-154a (2003); Enter. Leasing Co. S. Cent., Inc. v. Hughes, 833 So. 2d 832, 837-38 (Fla. Dist. Ct. App. 2002); Me. Rev. Stat. Ann. 29-A § 1652; RI Stat. § 31-34-4; Curtis v. Cuff, 537 A.2d 1072, 1074 (D.C. 1987); Iowa Code § 321.493; Del. Code Ann. tit. 21, § 6102(a) (1995); Bell v. Reid, 454 N.E.2d 1117, 1119 (Ill. App. Ct. 1983)(holding that the vehicle owner is liable for negligence of the driver unless the owner can rebut the presumption of agency); Williams v. Wheeler, 249 A.2d 104, 110-11 (Md. 1969) (holding that the owner of a vehicle who was not driving at the time of the accident cannot be held vicariously liable unless there was

11

would likely impose vicarious liability on automobile lessors in the same manner that Florida does.[6] We think that this establishes an adequate basis for a Texas court to impose Florida's law of vicarious liability despite the fact that Texas itself does not recognize vicarious liability under these circumstances. Accordingly, we reject Hertz's argument that the imposition of vicarious liability on these facts is so aberrant that we should disregard a § 174 analysis.

(2)

Section 174 directs forum courts to apply "[t]he local law of the state which has the most significant relationship to the occurrence and the parties with respect to the issue of vicarious liability" in deciding "whether one person is liable for the tort of another." Restatement (Second) Conflict of Laws § 174 cmt. a (1971). The district court mistakenly focused solely on the factors generally relevant to tort cases without following the directive of §§ 145 and 174 to apply the conflicts analysis with

---

evidence of agency); Mass. Gen. Laws Ann. ch. 231 § 85A; Harvey v. Craw, 264 A.2d 448, 451 (N.J. Super. Ct. App. Div. 1970), cert. dismissed, 267 A.2d 61 (N.J. 1970) (noting that the owner/lessor may be held vicariously liable unless the presumption of agency is rebutted); Okla. Stat. Ann. tit. 47, § 8-102(c); Wis. Stat. Ann. §§ 344.51(2), 344.01(2)(d) (1999); McGrew v. Stone, 998 S.W.2d 5,6 (Ky. 1999); Nev. Rev. Stat. § 482.305.

[6] See Burton v. Gardner Motors, Inc., 172 Cal. Rptr. 647, 649 (Ct. App. 1981); Conn. Gen. Stat. § 14-154a (2003); Enter. Leasing Co. S. Cent., Inc. v. Hughes, 833 So. 2d 832, 837-38 (Fla. Dist. Ct. App. 2002); Me. Rev. Stat. Ann. 29-A § 1652; RI Stat. § 31-34-4; Curtis v. Cuff, 537 A.2d 1072, 1074 (D.C. 1987); Iowa Code § 321.493; Mich. Comp. Laws § 257.401.

respect to the individual issues that may arise in a given tort case. Here, the specific issue is whether Florida or Texas law should apply to the question of Hertz's vicarious liability for Creamer's negligence.

Our finding that the district court erred in its analysis by not focusing on § 174, however, does not determine the ultimate question in this case: whether the court erroneously held that Texas, not Florida, law should apply on the question of vicarious liability. We must now conduct an analysis of that ultimate question.

(3)

(a)

As we have already noted, Texas has adopted the Restatement (Second) on Conflict of Laws and the "most significant relationship" test outlined in §§ 6 and 145 of the Restatement. See Duncan, 665 S.W.2d at 420-21. Section 145 directs that the law of the state with the most significant relationship to the particular issue in tort should govern that issue. Restatement (Second) Conflict of Laws § 145(1) (1971). Section 6 requires us to consider the relative interests of the respective states in having their laws applied to this case.

Comment a of § 145 states that §§ 156-174 "deal[] with particular issues in tort" with greater precision as compared to § 145, which is "cast in terms of great generality." This comment concludes that "the best way to bring precision into the field is

13

by attempting to state special rules for particular torts and for particular issues in tort." Id.[7]

We therefore turn once again to § 174, which directs us to consider

> (1) whether the relationship between the defendant and the other person makes the imposition of vicarious liability reasonable and (2) whether there is a reasonable relationship between the defendant and the state whose local law is to be applied.

§ 174 cmt. a. As to the first inquiry, the rental agreement created a bailment relationship between Creamer and Hertz in Florida. Comment b of § 174 states that a bailment relationship establishes "an adequate relationship" for the imposition of vicarious liability. As to the second inquiry, there is clearly a reasonable relationship between Hertz and Florida law: Hertz does business in Florida, and the rental contract that provides the potential basis for the imposition of vicarious liability refers to Florida law. Furthermore, the rental agreement required the Creamers to return the car to Hertz in Florida. On this basis, we are persuaded that the bailor-bailee relationship between Hertz and Creamer establishes an adequate basis for the imposition of vicarious liability against Hertz and that Hertz had a reasonable relationship with the state of Florida. We thus find that § 174

---

[7] The Restatement's framework does not provide a precise method for analyzing its provisions. See Gann v. Fruehauf Corp., 52 F.3d 1320, 1325 (5th Cir. 1995) (noting that the factors and principles in the Second Restatement "defy mechanical application" and are not to be "precisely followed in every instance[]").

14

weighs in favor of applying Florida law to the vicarious liability issue.

(b)

Continuing our analysis of the relevant Restatement provisions, § 174 next requires us to apply "the rule of § 145." We thus turn to § 145, which provides a list of contacts that should be considered in determining what state law applies to a specific issue in a tort case. These contacts include:

> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.

Hertz emphasizes that both the injury and the conduct causing the injury in this case occurred in Texas. These factors, however, are meant to be "evaluated according to their relative importance with respect to the particular issue." § 145. We also evaluate these contacts qualitatively instead of quantitatively. Spence v. Glock, Ges.m.b.H., 227 F.3d 308, 312 (5th Cir. 2000).

That both the injury and the conduct causing the injury occurred in Texas would weigh heavily in favor of applying Texas law to the issue of Creamer's negligence that caused an injury to a Texas citizen on a Texas road. But those contacts are less important in determining which state's law should apply to the

15

issue of Hertz's vicarious liability for those injuries caused by its lessee. More relevant to Hertz's vicarious liability is the place where the relationship of the parties is centered. See § 145 (2)(d). The most relevant relationship is that which arises from the lease of the automobile. Although Cates may have a real interest in the lease, Cates, a Texas resident, essentially has no relationship with the lease. Texas has no relationship with the lease, and Hertz has no relationship with Texas concerning this lease. Creamer has no relationship with the state of Texas arising from the lease. Creamer, however, is a Florida resident and is a party to the lease. Hertz is the other party to the lease and does its relevant business in Florida. Florida is the situs where the lease was executed. In short, Florida, not Texas, has the most significant relationship to the issue of Hertz's vicarious liability.

(c)

Now that we have identified the most significant contacts, § 145 directs that these contacts are to be considered under the principles provided in § 6. Section 6 requires us to engage in an analysis of the relative interests of the respective states. Specifically, we should assess:

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests

16

of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability, and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

We note that the interests we consider are those that are specifically relevant to the issue of vicarious liability. Our analysis of these factors leads us to conclude that Texas has only a minimal interest in having its law apply to the vicarious liability issue. Texas's interest in avoiding judgments against defendant bailors is not implicated here because Hertz is not a Texas corporation and did not conduct the business relating to this rental agreement in Texas. Furthermore, although Texas has the greater interest in seeing Cates compensated for her husband's injuries and in avoiding the burden of providing medical care for Mr. Cates, it is Florida law, not Texas law, which offers greater protection of those interests.

Florida's interests in having its law applied to the vicarious liability issue in this case, however, are also minimal. Florida's dangerous instrumentality doctrine protects plaintiffs from impecunious drivers by imposing liability on the owners of the vehicles, but here, the plaintiff is not a Florida resident.

17

Further, although Florida may have an interest in regulating the conduct of vehicle bailors to reduce the incidence of accidents, we are not persuaded that that interest extends beyond Florida's borders.

Thus, because the interests of neither state clearly predominate over those of the other, the interest analysis of § 6 provides little impact on our decision. We are, however, persuaded by our reading of the most significant relationship test of §§ 145 and 174 that Florida clearly has the greater connection to the facts and circumstances as they relate to the vicarious liability issue.[8] We therefore conclude that the district court erred in applying Texas law to the issue of Hertz's vicarious liability. Because the district court did not conduct a vicarious liability inquiry under Florida law, we remand this case to it for determination, under Florida law, of Hertz's vicarious liability for Cates's judgment against Creamer. On remand, the district court should focus particularly on whether the Florida law of vicarious liability may be applied to benefit non-Florida residents in a situation such as the case at hand. It seems that the district court will have to make an _Erie_ guess to resolve this question, as no Florida precedent exists to resolve the question.

---

[8] The dissent criticizes our failure to cite _Bartley v. Budget Rent-A-Car Corp._, 919 S.W.2d 747 (Tex. App. 1996), for its reasoning. As previously noted, Texas has adopted the Restatement (Second) of Conflicts of Laws, and § 174 is the section that directly addresses vicarious liability. We find _Bartley_, because it fails to address § 174, unhelpful to our analysis.

18

V

In sum, we conclude that the district court did not abuse its discretion in granting Cates's motion for new trial because Creamer did not present evidence rebutting the inference of negligence that arose from his falling asleep at the wheel. The first jury's verdict denying relief to Cates was, therefore, against the great weight of the evidence. We further hold that the district court erred in failing to analyze the conflict of laws question in the specific context of the vicarious liability issue and in failing to apply § 174 of the Restatement. Our own analysis of that section leads us to conclude that Florida, not Texas, law should apply to the vicarious liability issue because the bailment relationship, which is the basis for vicarious liability here, is centered in Florida and because § 174 specifically states that a bailment relationship is an adequate basis for the imposition of vicarious liability. Accordingly, we AFFIRM Cates's judgment against Creamer, VACATE the judgment for Hertz, and REMAND to the district court for determination of Hertz's vicarious liability under Florida law for the judgment entered against Creamer.

AFFIRMED in part; VACATED in part and REMANDED.

DeMOSS, Circuit Judge, concurring in part and dissenting in part:

Insofar as the majority opinion upholds the district court's grant of a new trial to Cates and, consequently, the verdict of the second trial, I concur. However, I respectfully dissent from the portion of the majority's opinion that holds that Florida law applies to the issue of vicarious liability.

This case is undisputedly based on diversity jurisdiction, and our responsibility in diversity cases is to determine what the substantive law of the forum state is, not what we think it should be. *See Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 328 (5th Cir. 2001); *Boardman v. United Servs. Auto. Ass'n*, 742 F.2d 847, 851 (5th Cir. 1984). Moreover, once we have determined what the law is, our duty is to apply it, not to define its contours. *Boardman*, 742 F.2d at 851. I dissent from the majority's opinion because the majority uses the wrong approach in determining what Texas's conflicts law is and in doing so, reaches the wrong result.

The majority cites a Texas Supreme Court case, *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex. 1984), for the proposition that Texas follows the *Restatement (Second) of Conflict of Laws* to determine choice of law in tort cases and appears to conclude that Texas would adopt section 174 of the Restatement in the vicarious liability context. The majority then provides a quite

voluminous analysis of how section 174 applies to the facts of this case. But the Texas Supreme Court has never applied the most-significant-relationship test in a vicarious liability case. Consequently, it is unclear (1) whether Texas's highest court would adopt section 174 as controlling law in the vicarious liability context and (2) how that same court would interpret that section even if it did. Moreover, where a state's highest court has not yet spoken on an issue, we have stated that we will look to the state's appellate courts for guidance unless we are convinced that the highest court of the state would not adopt the appellate courts' reasoning. *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 564-65 (5th Cir. 2004). The best evidence of what the Texas Supreme Court would do in this case can be found in *Bartley v. Budget Rent-A-Car Corp.*, 919 S.W.2d 747 (Tex. App.—Amarillo 1996), which I describe below in my discussion of how this case should have been decided.[9] Remarkably, the majority makes no mention at all of *Bartley* and fails to indicate why it believes the supreme court of Texas would not follow the reasoning set out there. And even if the majority has good reason not to follow *Bartley*, it

---

[9]There is another Texas appeals court case that not only agrees with *Bartley* but also agrees with the district court below that Texas law should apply in a case like this. *Perkins v. Dynasty Group Auto*, No. 08-01-00493-CV, 2003 WL 22810452, at *3-*4 (Tex. App.—El Paso Nov. 25, 2003) (unpublished). However, because that case is not published, I only cite it here to bolster my contention that *Bartley* is the best evidence of what the Texas Supreme Court would do.

21

fails to consider the next best solution in a choice of law case in which guidance from the state's supreme court is lacking: certification.

I have spoken out on the importance of certification several times in the past, *see, e.g.*, *Tanks v. Lockheed Martin Corp.*, 417 F.3d 456, 468 (5th Cir. 2005) (DeMoss, J., specially concurring); *Compass Bank v. King, Griffin & Adamson P.C.*, 388 F.3d 504, 506-07 (5th Cir. 2004) (DeMoss, J., dissenting), and one reason I dissent here is to emphasize my position regarding that important judicial tool. As I have said before, certifying an unanswered question to a state's supreme court is a preferable course of action to our trying to make an *Erie* guess as to the question of state law involved. Granted, we have refused to certify when the state's law is clear, but the law is anything but clear here — section 174 is ambiguous, and it has never been adopted or interpreted by a Texas court. This Circuit used to subscribe to a federalist policy of seeking guidance in diversity cases from "the one court constitutionally entitled to supply it," the supreme court of the forum state. *Boardman*, 742 F.2d at 851; *see also Pucket v. Rufenacht, Bromagen, & Hertz, Inc.*, 903 F.2d 1014, 1021 n.13 (5th Cir. 1990) ("This course [of certifying questions directly to the supreme court of the forum state] has been pursued often by the Fifth Circuit and has been enthusiastically endorsed by the Supreme Court."). However, the majority's refusal to even consider

22

certification indicates this Circuit's increasing animosity towards the use of certification in diversity cases. I urge the Court to return to these principles of federalism. As former Chief Judge Brown aptly stated in *Boardman*, quoting his own law review article, "Federal courts should hesitate to 'trade judicial robes for the garb of prophet' . . . when an available certification procedure renders the crystal ball or divining rod unnecessary." *Boardman*, 742 F.2d at 851 (quoting John R. Brown, *Certification—Federalism in Action*, 7 CUMB. L. REV. 455, 455 (1977)). We should heed Judge Brown's advice and use the great tool of certification more freely.

Another reason I dissent is that even if the majority uses the right approach, I believe it reaches the wrong result. First, *Bartley* is a good indicator of how the Texas Supreme Court would decide this case. Not only are *Bartley*'s facts substantially similar (a Texas plaintiff suing a Michigan car rental agency for the negligence of a driver), but also the underlying policy reason for selecting Texas substantive law is the same. In *Bartley*, the Seventh Court of Appeals of Texas declined to apply the law of Michigan, the state where the car rental agency was located, because it found that layering Michigan's "no fault" liability scheme on top of Texas's system of "proportional responsibility and recovery" would have an unjust result, especially when the limited damages aspect of Michigan law was not also imported. *Bartley*, 919 S.W.2d at 755-56. The *Bartley* court found it determinative that the

plaintiff sought a recovery unlimited by law through application of part of a Michigan law that, if applied in its entirety, would have limited recovery. *Id.* at 755. In this case, the plaintiff attempts to recover $2,156,000.00 from the defendant car rental agency under Florida's dangerous instrumentality doctrine. Yet the plaintiff does not seek application of the rest of Florida's laws, which limit the liability of lessors who rent or lease a motor vehicle for less than one year. *See* FLA. STAT. ANN. § 324.021(9)(b)(2) (generally limiting a lessor's liability to $100,000 per individual and $300,000 per incident (unless the lessor does not carry adequate insurance)); *see also Fischer v. Alessandrini*, 907 So. 2d 569, 570-71 (Fla. Dist. Ct. App. 2005) (discussing the policy for limiting recovery under the dangerous instrumentality doctrine). I do not see how the majority can ignore *Bartley* on these facts, especially where "applying the law of the forum, Texas, will further its own policy of serving the interest of certainty, predictability and uniformity of result, thereby providing ease in the determination and application of the law." *Bartley*, 919 S.W.2d at 756.

The second reason I believe the majority reaches the wrong result is that it misinterprets sections 174 and 145 of the Restatement. First, the comments to section 174 do not cover the situation where party A, a domiciliary of state X, rents a car from B rental agency in state X and, with permission, drives to state Y

and negligently injures party C there. Furthermore, comment c states,

> Vicarious liability may also be imposed by application of the local law of some state other than that of conduct and injury. So, for example, vicarious liability may be imposed under the local law of the state where the relationship between the one sought to be held liable and the tortfeasor is centered. *Application of the local law of this state to impose vicarious liability is particularly likely if this state has some relationship to the injured plaintiff.*

*Restatement (Second) of Conflict of Laws* § 174 cmt. c (1971) (emphasis added). Here, Florida has no relationship to the injured plaintiff. Therefore, section 174 does not provide a concrete answer as to whether vicarious liability should be imposed on the car rental agency in our case, contrary to the majority's assertion.

Turning to section 145, the majority incorrectly interprets the fourth contact to be considered under that section in determining what state law applies to a specific issue in a tort case — "the place where the relationship, if any, between the parties is centered." *See id*. § 145(2)(d). The majority states that the relevant relationship is "that which arises from the lease of

25

the automobile."  But there was no relationship between the parties prior to the accident in this case, and at least one Texas court has held that section 145's fourth contact is irrelevant in that situation. *Bartley*, 919 S.W.2d at 755. Because the majority finds this contact to be determinative in Part B.3.b of its opinion, I believe its result is flawed.

Because I have not been able to convince the majority to certify the conflicts question presented in this case to the Texas Supreme Court, I suggest what I believe is the next best option for the district court on remand: Now that we have affirmed the $2,156,000.00 judgment in favor of Cates against Creamer, the district court should dismiss without prejudice Cates's claim against Hertz, and thereby permit Cates to sue Hertz in Florida on the theory that Florida's vicarious liability law makes Hertz liable to pay the judgment against Creamer. *See Manshack v. Southwestern Elec. Power Co.*, 915 F.2d 172, 174 (5th Cir. 1990) ("[T]he courts have generally followed the traditional principle that dismissal should be allowed unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit."). Although some courts have held that dismissal is not appropriate when the plaintiff will reinstate the action in a forum that will apply a different body of substantive law, *see*, *e.g.*, *Rodriguez v. Marks Bros. Pickle Co.*, 102 F.R.D. 104 (E.D. Wis. 1984), that is not the case here. The majority opinion requires the

district court in Texas to apply Florida state law, and that is the same body of substantive law that a Florida court would apply if the claim against Hertz were brought there. No prejudice to the defendant would result. *Manshack*, 915 F.2d at 174 (finding no prejudice where the same choice of law principles would apply in state court).

For the above reasons, I respectfully dissent from the portion of the majority's opinion that holds that Florida law applies to the issue of vicarious liability, and I recommend that the district court below dismiss the claim against Hertz without prejudice so that the plaintiff can bring her claim against Hertz in Florida state court.

27